## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| HITACHI MEDICAL SYSTEMS | ) | CASE NO.  5:09-cv-01575 |
| AMERICA, INC. | ) | |
| | ) | |
|         Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| DANIEL BRANCH, | ) | MEMORANDUM OPINION AND |
| et al., | ) | ORDER |
| | ) | |
| | ) | |
|         Defendant. | ) | |

This matter comes before the Court upon the separate motions of Defendant Daniel Branch and Defendants David Branch and Martin Kern to dismiss Plaintiff Hitachi Medical Systems America, Inc.'s complaint (Doc. No. 1) for lack of personal jurisdiction pursuant to Rule 12(b)(2), failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), and, as to count XII of the complaint, lack of subject matter jurisdiction pursuant to Rule 12(b)(1). While defendants have filed two separate motions, the arguments raised therein are virtually indistinguishable and the Court shall address both motions in this single memorandum order and opinion. For the reasons that follow, the Court **DENIES** the defendants' motions to dismiss in their entirety.

## I.       FACTUAL AND PROCEDURAL HISTORY

The facts of this case are taken from Plaintiff's Amended Complaint (Doc. No. 1) and Opposition (Doc. No. 24) and are assumed true for the purposes of this Memorandum Opinion and Order. Plaintiff Hitachi Medical Systems America, Inc. ("Hitachi") is a Delaware corporation with its principal place of business in Twinsburg, Ohio. Hitachi sells and services

Magnetic Resonance Imaging (MRI) equipment. Defendant Daniel Branch ("Daniel")[1] is a Florida resident and a shareholder and Chief Financial Officer of Horizon Medical Group, Inc. ("Horizon"). Defendant David Branch ("David") is a Florida resident and a shareholder and Chief Executive Officer of Horizon. Defendant Martin Kern ("Kern") is a Florida resident and a shareholder and officer of Horizon. Horizon is a former customer of Hitachi, having bought MRI equipment from Hitachi between 2002 and 2004 and not a named defendant in this case.

Hitachi and Horizon are not strangers to each other, nor to litigation. On July 9, 2007, Hitachi filed suit in this Court against Horizon and certain individual LLCs which operated Horizon's medical centers ("Horizon litigation"). (Case No. 5:07-cv-02035-SL.) After a lengthy litigation concluding with a jury trial, Hitachi obtained judgments in the amount of $3,286,159.51 against Horizon and its associated individual LLCs. (Horizon litigation, Doc. No. 251.) Horizon and the LLCs have refused to pay the judgment, which was entered on November 10, 2008.

The alleged conduct that forms the basis of this lawsuit began in 2005, and was discovered by Hitachi in January 2009. In 2005, Hitachi alleges, Horizon transferred "all of Horizon's assets to its affiliate, Med Fund LLC," an entity owned by JFB Holdings, Inc ("JFB Holdings"). (Doc. No. 1 at ¶¶ 21-22.) Daniel, David, and Kern are officers and shareholders of JFB Holdings, and, according to Hitachi, therefore owners of Med Fund. (*Id.* at ¶ 24.) Defendants continued to assert, however, that Horizon was an operating entity that "manage[d] all the centers, it gets a fee from the centers for management." (*Id.* at ¶ 27.) Between 2005 and 2008, Med Fund assumed certain liabilities of Horizon. (*Id.* at ¶ 28.) In 2006, Med Fund made a payment of $160,000 to Kern. (*Id.* at ¶ 29.) Hitachi broadly refers to the Horizon-to-Med Fund

---

[1] The Court shall refer to Daniel and David Branch by their first names to alleviate confusion. No disrespect is intended.

2

transfer in its complaint as the "2005 transfer," and the Court shall do the same.

Hitachi further complains about the "2008 transfer," which occurred while the Horizon litigation was ongoing. On approximately May 15, 2008, Daniel testified that Horizon was a going concern that paid its bills and would be able to pay its debts to Hitachi. (*Id.* at ¶ 30.) Very soon thereafter, and while the Horizon litigation was still ongoing, the assets of Horizon and the individual LLCs, and Med Fund, were sold to a third party purchaser pursuant to an Asset Purchase Agreement ("the APA"). (*Id.*) Hitachi learned about the 2008 transfer on January 13, 2009, when Horizon produced a copy of the APA pursuant to post-judgment discovery and its request for a judgment debtor's exam in connection with the Horizon litigation. (*Id.* at ¶ 32-33).

On July 9, 2009, Hitachi filed its complaint in this lawsuit. (Doc. No. 1.) On September 3, Daniel filed a similar motion to dismiss Hitachi's complaint. (Doc. No. 19.) On September 24, David and Kern filed a motion to dismiss. (Doc. No. 21.) On October 27, Hitachi filed a combined opposition to the motions to dismiss.[2] (Doc. No. 24.) Defendants have filed separate replies. (Doc. Nos. 28, 30.) Against this backdrop, these motions are ripe for decision.

## II.     STANDARD OF REVIEW

### A.     Personal Jurisdiction

Hitachi bears the burden of setting forth a prima facie showing of personal jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). On a motion to dismiss pursuant to Rule 12(b)(2), the Court has three procedural alternatives; it may (1) decide the motion on affidavits alone; (2) permit discovery in aid of deciding the

---

[2] Contemporaneously with their opposition, Hitachi filed a motion to strike the declarations (of David and Kern) that accompanied David and Kern's motion to dismiss, on technical grounds. (Doc. No. 25.) On October 30, 2009, David and Kern supplemented their motion to dismiss with identical declarations that remedied the technical deficiencies identified by Hitachi's motion to strike. (Doc. No. 27.) Therefore, Hitachi's motion to strike is **DENIED AS MOOT**.

3

motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Id*. When the Court elects to decide the motion upon the written submissions, it must view the affidavits, pleadings and related documentary evidence in the light most favorable to the plaintiff. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The Court is not, however, precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir. 1997). Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co*., 504 F.2d 927, 930). Where, as here, however, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing or limited discovery, the plaintiff's burden is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (internal quotation marks omitted), and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."[3] *Theunissen*, 935 F.2d at 1458.

"In dealing with a diversity case, [courts] look to the law of the forum state to determine whether personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). In *Bird*, however, the Sixth Circuit stated:

We have recognized that Ohio's long-arm statute is not conterminous with federal

---

[3] Neither party has requested either limited discovery or an evidentiary hearing.

constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 1994 Ohio 229, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871-72. Personal jurisdiction may be based on either general or specific jurisdiction. *Id.* at 873. In this case, Hitachi seeks specific jurisdiction over defendants in connection with the 2005 and 2008 transfers. Specific jurisdiction exists, consistent with due process, if a defendant's contacts with the forum state satisfy all three prongs of the test set forth in *Southern Machine Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

"Jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co*., 504 F.2d 927, 929 (6th Cir. 1974) (so holding despite allegations that the corporation was the alter-ego of the individual defendants). "On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984). The Sixth Circuit has held that:

> The mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is *actively and personally involved* in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she personally availed herself of the forum

5

and the reasonably foreseeable consequences of that availment.

*Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (emphasis added).

**B.      Rule 12(b)(6)**

The propriety of dismissal pursuant to Rule 12(b)(6) is a question of law and "[d]ismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.*, 335 Fed. Appx. 587 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett*, 332 Fed. Appx. 232 (6th Cir. 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)). "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [. . .]. Factual allegations must be enough to raise a right to relief above the speculative level." *ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank*, 333 Fed. Appx. 994 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))).

**III.     LAW AND ANALYSIS**

**A.      Personal Jurisdiction**

Hitachi elucidates the theory of its case in its opposition, and reciting that theory

6

here illuminates the discussion of personal jurisdiction:

> The right to payment at issue here has been reduced to judgment [in the Horizon litigation], but rather than senselessly pursue the judgment debtors – which Defendants have either rendered insolvent or sold off to third parties – [Hitachi] has elected to pursue the individual Defendants under alter-ego/veil piercing theories.

(Doc. No 24 at p. 19.) It is undisputed that Horizon, which was a party to the contract with Hitachi and also at one point had franchise agreements with businesses in this state, is subject to personal jurisdiction in Ohio. Hitachi argues that because it alleges that Horizon and Daniel, David, and Kern are alter egos, defendants are subject to personal jurisdiction in Ohio. For the purpose of this motion to dismiss and in light of Hitachi's "relatively slight" burden to make a "prima facie showing" of personal jurisdiction, *see Theunissen, supra,* the Court agrees.

"Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Estate of Thomson v. Toyota Motor Corp. Worldwide,* 545 F.3d 357, 362 (6th Cir. 2008) (citing *Patin v. Thoroughbred Power Boats Inc*., 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases)). "The exercise of jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the *same entity* – thus, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the International Shoe due process analysis." *Sys. Div., Inc. v. Teknek Elecs., Ltd*., 253 Fed. Appx. 31, 37 (Fed. Cir. 2007) (emphasis in original). Moreover, the exercise of personal jurisdiction over an alleged alter ego requires application of "a less onerous standard" than that necessary for piercing the corporate veil for liability purposes. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904

7

(2d Cir. 1981). Therefore, the Court turns to whether Hitachi has made a prima facie showing that Daniel, David, and Kern are the alter ego of Horizon.

**B.      Choice of Law**

The Court must determine which law to apply to determine whether Hitachi has made the requisite prima facie showing. Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co*., 814 F.2d 1120, 1122 (6th Cir. 1987). Here, the forum state is Ohio, and this Court would ordinarily apply its choice of law provisions. The potential importance of the choice of law ramifications to the personal jurisdiction and ultimate liability issues in this case are great. In light of the minimal attention given to this issue by both parties, however, and as explained below, for the purposes of these motions to dismiss, "the laws of the states do not conflict, [so] no choice-of-law analysis is necessary." *Mumblow v. Monroe Broad., Inc*., 401 F.3d 616, 620 (5th Cir. 2005).

Hitachi urges this Court to apply Ohio law, but concedes Defendants may argue that Delaware law should apply to the alter ego analysis. (Doc. No. 24 at p. 14.) Defendants argue, albeit in the section of their briefs addressing the 12(b)(6) challenge, that "federal courts have followed the Restatement § 307 to hold that [alter ego analysis] is governed by the state of incorporation." (Doc. No. 21 at p. 12.) Hitachi asserts that Horizon and JFB Holdings are (or were) Delaware corporations. (Doc. No. 24 at p. 26 n. 11.)

Under Ohio law,

the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss

8

resulted to the plaintiff from such control and wrong.

*Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos*., 67 Ohio St. 3d 274, 1993 Ohio 119, 617 N.E.2d 1075, 1086 (Ohio 1993). The first element is a restatement of the alter ego doctrine, which requires that plaintiff "show that the individual and the corporation are fundamentally indistinguishable." *Id.* In deciding whether the company is an alter ego of the individual, Ohio courts consider such factors as:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App. 3d 417, 602 N.E.2d 685, 689 (Ohio App. 1991). While the *Belvedere* test remains controlling law as to the first and third prongs in Ohio, the Ohio Supreme Court recently clarified the second prong of that test in *Dombroski v. Wellpoint, Inc*., 119 Ohio St. 3d 506 (2008). In *Dombroski*, the Ohio Supreme Court resolved a split in the interpretation of the second prong of the *Belvedere* test among several Ohio district courts of appeals by stating:

> [W]e hold that to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct. The first and third prongs of the *Belvedere* test are not affected by this ruling and must still be met for a piercing claim to succeed.

*Dombroski*, 119 Ohio St. at 513. Finally, "because of the equitable nature of the veil-piercing doctrine, no list of factors can be exclusive or exhaustive." *Carter-Jones Lumber Co. v. LTV Steel Co*., 237 F.3d 745, 749 (6th Cir. 2001) (applying Ohio law).

9

As this court has explained, "[p]ersuading a Delaware Court to disregard the corporate entity is a difficult task [. . .]. The legal entity of a corporation will not be disturbed until sufficient reason appears [. . .]. In an appropriate case, however, the corporate veil may be pierced." *Plaskon Elec. Materials v. Allied Signal*, 904 F. Supp. 644, 656 (N.D. Ohio 1995) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.* Case No. 1131, 15 Del. J. Corp. L. 1030, 1989 Del. Ch. LEXIS 114 at *10 (Del. Ch. Sept. 19, 1989) (citations omitted)). Delaware courts have held that, in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of a corporation demand it, the corporate veil may be pierced. *See, e.g., Pauley Petroleum, Inc. v. Continental Oil Co.*, 43 Del. Ch. 366 (1967). Further, the *Harco* court explicitly accepted the alter ego theory of piercing the corporate veil, adopting the test set forth by the District Court of Delaware in *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988):

> an alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Id.* As in Ohio, however, "no single factor could justify a decision to disregard the corporate entity, but [. . .] some combination of them was required and that an overall element of injustice or unfairness must always be present, as well." *Plaskon Elec. Materials*, 904 F. Supp. at 656 (citing *Harco,* 1989 Del. Ch. LEXIS 114, at *11.)

Under either Ohio or Delaware law, Hitachi has made a prima facie showing that Daniel, David, and Kern are the alter ego of Horizon sufficient to withstand the motions to dismiss based on personal jurisdiction. Hitachi first provides the January 14, 2009, deposition of

10

Daniel Branch, which provides prima facie evidence of, among other things, the commingling of corporate funds, the absence of corporate records, and that corporate formalities were not observed. (Doc. No. 24-2.) In that deposition, Daniel testifies that Horizon ceased doing business in 2005, yet admits to using general ledgers in Horizon's name which run through at least July 31, 2007. Daniel's testimony also states, in connection with money transfers between the company and Daniel, David, and Kern, that "yeah, there was a lot of money in and a lot of money out at that particular time. There was a lot of wiring going in and there was a lot of wiring going out." (*Id.* at p. 88.) Daniel explains the transfers, which are sizable especially as to Kern, as repayments of loans that defendants made to the company in order to allow the company to meet its payroll obligations. The loans, however, were apparently not memorialized in any manner. Hitachi also cites to, and provides deposition evidence of, a number of lease payments for Daniel and David's Lexus and Porsche, respectively, and payments to a Jet Sales and Service, a jet share program. (Doc. No. 24-2 at p. 96; Doc. No. 24-5 at p. 89.) Moreover, while Defendants argue that Hitachi has failed to provide evidence of Defendants' dominance and control of Horizon, Daniel and David have previously represented to this Court that they were the chief financial officer, and chief executive officer, respectively, and were 20% and 33% shareholders, respectively, of that corporation. (Horizon litigation, Doc. No. 126-1 at p. 9.)

As defendants correctly argue, Hitachi's claim that Horizon was grossly undercapitalized cannot be proven by merely showing that the company was not profitable, nor is it proved by the company's eventual insolvency. But, as discussed above, no single factor is dispositive under either Ohio or Delaware law. Moreover, there is sufficient evidence to support a conclusion that the "overall element of injustice or unfairness" is present, *see Plaskon Elec. Materials, supra,* and the "equitable nature" of the doctrine, *see Carter-Jones Lumber Co.,*

11

*supra,* should weigh in favor of finding personal jurisdiction. This Court has specifically found that Daniel Branch has made misrepresentations regarding the financial status of Horizon for the purpose of obscuring assets. (Doc. No. 24-4 at pp. 5-6.) Hitachi asserts, and provides evidence in the form of an asset purchase agreement, that while the Horizon litigation was pending, Horizon's (or Med Fund's, or both) assets were sold to a third party. (Doc. No. 24-6.) The Ohio Supreme Court's recent clarification of *Belvedere* does not affect the analysis here, as the alleged violation of the Fraudulent Transfer Act suffices as conduct "in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski*, 119 Ohio St. at 513.

Therefore, this Court concludes that, for the purposes of these motions to dismiss, Hitachi has made a prima facie showing that Daniel, David, and Kern and Horizon are alter egos and exercises personal jurisdiction over defendants on that ground. This prima facie showing, however, is merely that. "A threshold determination that personal jurisdiction exists 'does not relieve [the plaintiff] [. . .] at the trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence." *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989) (quoting *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 n. 4 (2d Cir.)). A pretrial ruling denying a 12(b)(2) motion to dismiss "does not purport to settle any disputed factual issues germane to the underlying substantive claim. What is settled is the court's power to exercise personal jurisdiction over a defendant, nothing more." *Val Leasing, Inc. v. Hutson*, 674 F. Supp. 53, 55 (D. Mass. 1987). The Supreme Court has made explicitly clear that the party asserting jurisdiction "must carry throughout the litigation the burden of showing that he is properly in court." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Given the Court's conclusion that under either Ohio or Delaware law, Hitachi has

made the requisite prima facie showing to survive a motion to dismiss, Defendants' motion to dismiss pursuant to Rule 12(b)(2) is therefore **DENIED**. The Court notes, however, that "given the divergence among jurisdictions as to their piercing law, the choice-of-law approach followed can have outcome-determinative consequences." Gregory S. Crespi, *Choice of Law in Veil-Piercing Litigation*: *Why Courts Should Disregard the Internal Affairs Rule and Embrace General Choice-of-Law Principles,* 64 N.Y.U. Ann. Surv. Am. L. 85, 125 (2008). This Court assumes without deciding that there may be significant, perhaps outcome-determinative, differences in the application of the alter ego analysis under Delaware and Ohio law to this case, and will expect both parties to more thoroughly brief this issue in future relevant filings.

**C.      Rule 12(b)(6)**

### 1.        The Fraudulent Transfer Claims (Counts II through VIII)

Defendants next contend that the fraudulent transfer claims must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted because Delaware, not Ohio, law controls the analysis as to whether the defendants are the alter ego of Horizon. While defendants may or may not ultimately be correct that Delaware law controls the alter ego analysis, it does not necessarily follow that the transfers complained of by Hitachi are also governed by Delaware law. Again, Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *See Klaxon Co., supra.* In *Morgan v. Biro Manufacturing*, 15 Ohio St. 3d 339, 342 (1984), the Ohio Supreme Court held that Ohio courts must look instead to the balancing test set forth in the Restatement (Second) of Conflict of Laws in determining which state's law to apply to tort actions. *See also Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994) (explaining that Ohio now applies the Restatement analysis to tort actions rather than *lex loci delicti*). "Therefore, in Ohio, a party may overcome the presumption that the law of

the place where the injury occurs will be applied to a tort action, if it can demonstrate that another state has a more significant relationship to the action." *Muncie Power Prods. v. United Techs. Auto., Inc.*, 328 F.3d 870, 874 (6th Cir. 2003).

"Section 145 of the Restatement, which governs torts generally, sets forth the analysis to be undertaken by courts in a tort action in determining whether another state has a 'more significant relationship.'" *Id.* That section directs courts to consider the following four factors, and states in relevant part:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF Conflict OF LAWS § 145  (1971). "Section 6 provides further guidance for analysis under the Restatement and describes several general principles to be considered when conducting a choice-of-law analysis. These principles include: the interests of each state in having its law applied; the relevant policies of the forum; certainty, predictability and uniformity of result; ease in the determination and application of the law to be applied; the promotion of interstate order; and the basic policies underlying the field of law." *Muncie Power Prods.,* 328 F.3d at 874 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)).

"The internal affairs doctrine is a conflict of laws principle which recognizes that

14

only one state should have the authority to regulate a corporation's internal affairs. A corporation's internal affairs include matters peculiar to the relationship among or between the corporation and its current officers, directors, and shareholders." *Bryan v. DiBella*, 2009 Ohio 1101 at *13 (Ohio Ct. App. Mar. 12, 2009). "[O]therwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAW § 307-08 (1971). The Restatement explains the doctrine by offering examples of internal affairs "which involve primarily a corporation's relationship to its shareholders":

> Steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares. Matters which may also affect the interests of the corporation's creditors include the issuance of bonds, the declaration and payment of dividends, loans by the corporation to directors, officers and shareholders, and the purchase and redemption by the corporation of outstanding shares of its own stock.

RESTATEMENT (SECOND) OF CONFLICT OF LAW § 302 cmt. a (1971).

Contrary to Defendants' assertions, the internal affairs doctrine does not mandate the application of Delaware law to Hitachi's fraudulent transfer claims. Notwithstanding the fact that several of the fraudulent transfer claims involve transfers to defendants, who are corporate officers and stockholders, the claims involve the rights of Hitachi, a creditor, and are not internal corporate governance issues that are typically the subject of the internal affairs doctrine. *See Faulkner v. Kornman* (*In re Heritage Org., L.L.C.*), 413 B.R. 438, 463 (Bankr. N.D. Tex. 2009). Examining the relevant factors as stated above, the Court finds that Ohio law should apply to Hitachi's fraudulent transfer claims. The alleged injury occurred in Ohio, and the parties' relationship was centered here. While Delaware has an interest in regulating its entities, Ohio's

15

interest in protecting its creditors outweighs Delaware's interest. *See Stanziale v. Dalmia* (In re *Allserve Systems Corp*.), 379 B.R. 69, 79-80 (Bankr. D.N.J. 2007) (interest of New Jersey in protecting its creditors outweighs interest of Delaware in regulating its entities). Moreover, while the allegedly fraudulent transfers did not occur in Ohio, neither did they occur in Delaware. *See Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 425-28 (S.D.N.Y. 2006) (interest of jurisdiction where fraudulent transfer occurred outweighs interest of partnership in having internal relationships governed by law of state under which it is organized).

Ohio is the state where the alleged injury occurred, and Ohio has the most significant relationship to this action. Therefore, this Court finds that Ohio law applies to Hitachi's fraudulent transfer claims.[4] Defendants' motions to dismiss counts II through VIII pursuant to Rule 12(b)(6) are therefore **DENIED**.

### 2.    The Ancillary Claims (Counts I, IX through XIII)[5]

Defendants attack counts I, and IX through XIII on two grounds. Defendants first argue that because these claims are ancillary to the fraudulent transfer claims, they must be dismissed upon the dismissal of the underlying claims. Next, Defendants argue that counts I, and IX through XII do not present independent causes of action upon which liability can be based. Defendants' first argument is meritless because the Court has denied Defendants' motion to dismiss the fraudulent transfer claims as discussed in the preceding paragraphs.

Count I of Hitachi's complaint sets forth the allegations supporting plaintiff's argument that Daniel, David, and Kern are the alter ego of Horizon and JFB Holdings. While

---

[4] The Court also notes that even if it were to accept Defendants' argument and hold that the fraudulent transfer claims must be brought under Delaware law, both Delaware and Ohio are among the 42 states that have enacted the Uniform Fraudulent Transfer Act, and Hitachi would need only to amend its complaint to state a claim under the Delaware statute. *See* OHIO REV. C. §§ 1336.01 *et seq*. and DEL. CODE tit. 6, Subtit. II, Ch. 13, §§ 1301 *et seq.*

[5] Hitachi erroneously names two counts "Count XII." The Court will treat the count entitled "Injunctive Relief" as Count XII and will discuss the following count, entitled "Punitive Damages," as Count XIII.

Defendants are undoubtedly correct that "an alter ego claim is not by itself a cause of action," *Spartan Tube & Steel v. Himmelspach (In re RCS Engineered Prods. Co.)*, 102 F.3d 223, 226 (6th Cir. 1996), it is evident from the complaint that Count I plays the preeminent role in this litigation. Dismissal of Count I, the allegations of which are incorporated by reference into each and every other claim, on the technical ground that it is set forth in its own enumerated count is inappropriate in light of Rule 8's dictates that "[n]o technical form of pleading is required" and "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(d)(1), 8(e). Thus, while the Court notes that Count I does not state an independent claim for relief and merely seeks recovery from Daniel, David, and Kern for causes of action that would otherwise only obtain from Horizon or JFB Holdings, the Court declines to dismiss Count I. *See Ruffing v. Masterbuilt Tool & Die, LLC*, 2009 U.S. Dist. LEXIS 4754 at *43 (N.D. Ohio Jan. 23, 2009).

Counts IX ("Attachment"), X ("Garnishment"), XI ("Receiver"), and XII ("Injunction") are likewise enumerated as separate claims. As Defendants correctly note, these counts are not independent causes of action, but rather forms of potential relief.[6] Hitachi concedes this point, and claims only that it has "essentially reserved the option to move the Court for the requested relief [with respect to Counts IX-XI]." While plaintiff's complaint is inartfully styled, the Court declines to dismiss Counts IX-XI on technical grounds, and accepts the proposition as set forth in Daniel's reply which states "Defendant [Daniel Branch] has no objections to these allegations remaining in the complaint so long as it is clear that they do not state separate causes of action and are merely possible remedies that plaintiff may seek from the Court through the filing of motions or writs." (Doc. No. 30 at p. 9.)

[6] The Court notes that Plaintiff's complaint also lists the four potential remedies under its prayer for relief. (Doc. No. 1, ¶ 127.)

17

With respect to Count XII and Defendants' additional argument that this Court does not have subject matter jurisdiction pursuant to Rule 12(b)(1) to grant injunctive relief which amounts to a prejudgment attachment under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999), the Court accepts that Hitachi has reserved its right to later seek prejudgment injunctive relief, but has not yet done so. As such, this issue is not yet ripe for review. Therefore, the Court likewise declines to dismiss Count XII.

Count XIII seeks punitive damages. In Ohio, punitive damages are not an independent cause of action, but are, when appropriate, "awarded as a mere incident of the cause of action in which they are sought." *See Moskovitz v. Mt. Sinai Med. Ctr*., 69 Ohio St. 3d 638, 650 (1994); *Bishop v. Grdina*, 20 Ohio St. 3d 26, 28 (1985) ("No civil cause of action in this state may be maintained simply for punitive damages."). Again, however, dismissal of the claim for punitive damages on the technical ground that it is listed as a separately enumerated count is inappropriate here. Defendants also argue that the Ohio Uniform Fraudulent Transfer Act, specifically OHIO REV. CODE ANN. 1336.06, does not provide for punitive damages and that Count XIII must be dismissed on that ground. This argument is without merit. "In a case involving a fraudulent transfer, the creditor may obtain damages and 'any other relief that the circumstances may require,' including punitive damages and attorney fees if warranted." *Stewart v. R.A. Eberts Co*., 2009 Ohio 4418 at *25 (Ohio Ct. App. Aug. 18, 2009) (citing OHIO REV. CODE ANN. 1336.07(A)(3)(c) and 1336.10). Therefore, the Court declines to dismiss Count XIII.

18

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) are **DENIED.**

**IT IS SO ORDERED**.

Dated:  March 4, 2010

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

19