UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

HITACHI MEDICAL SYSTEMS        )
AMERICA, INC.,                 )
                               )        Case No: 5:09-cv-1575
            Plaintiff,         )
                               )        JUDGE SARA LIOI
        v.                     )        Magistrate Judge George J. Limbert
                               )
DANIEL BRANCH, et. al.,        )
                               )        **Interim Report and Recommendation**
            Defendants.        )        **Re: ECF Dkt. #41**


        The instant case is before the Court on Plaintiff Hitachi Medical Systems America, Inc.'s

("Plaintiff") motion for preliminary injunction. ECF Dkt. #41. On August 27, 2010, the Honorable

Sara Lioi referred the instant matter to the undersigned for the preparation of a report and

recommendation. ECF Dkt. #171. For the following reasons, the undersigned recommends that the

Court DENY Plaintiff's motion:

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

        On July 9, 2009, Plaintiff filed a complaint against Daniel Branch, David Branch, and Martin

Kern (collectively, "Defendants"). ECF Dkt. #1. The complaint alleges that Plaintiff sells and

services magnetic resonance imaging ("MRI") equipment, and Horizon Medical Group, Inc.

("Horizon") purchased MRI equipment and entered multi-year agreements with Plaintiff to service

and maintain MRI units at multiple Horizon locations ("Service Maintenance Agreements" or

"SMAs"). ECF Dkt. #1 at ¶¶11, 12. Plaintiff alleges that Horizon breached the SMAs, and Plaintiff

then filed suit in an earlier case (N.D. Ohio 5:07CV2035) alleging breach of contract and unjust

enrichment ("2007 lawsuit").  ECF Dkt. #1 at ¶16.  Plaintiff contends that it obtained judgments in the amount of $3,286,159.51 against Horizon and certain individual LLCs that operated Horizon MRI centers ("Individual LLCs").  *Id*. at ¶17.  Plaintiffs contend that Horizon and the Individual LLCs (collectively, "judgment-debtors") have failed to pay the judgment and that the full amount, along with post-judgment interest and costs, remains outstanding.  *Id*. at ¶18.

Plaintiff alleges that Defendants were all shareholders of Horizon.  ECF Dkt. #1 at ¶¶ 13-15. Plaintiff contends that Defendants transferred all of Horizon's assets to its affiliate, Med Fund LLC ("Med Fund").  *Id*. at ¶21.  Plaintiff contends that Med Fund was owned by JFB Holdings, Inc. ("JFB Holdings"), and at all relevant times, Defendants were officers, shareholders, owners, and insiders of JFB Holdings.  *Id*. at ¶¶22-23.  Plaintiff also contends that Defendants were officers and shareholders of Horizon.  *Id*. at ¶ 25.  Plaintiff contends that on or about May 16, 2008, Defendants, Med Fund, and JFB Holdings sold all of the assets of Horizon, Med Fund, and the Individual LLCs to third party purchasers pursuant to an Asset Purchase Agreement ("APA").  *Id*. at ¶30.  Plaintiff refers to these transactions collectively as the 2008 transfer.  *Id*.  Plaintiff avers that the 2008 transfer was or may have been made to a good faith transferee who took for value, that the proceeds of the 2008 transfer exceeded the amount of the judgment that Plaintiff received in the 2007 lawsuit, and that Defendants have received the proceeds from the 2008 transfer.  *Id*. at ¶34-36.

Plaintiff has stated claims for piercing the corporate veil (Count 1), fraudulent transfer under Ohio statutes (Counts II-VIII), attachment (Count IX), garnishment (Count X), "receiver" (Count

XI), "injunctive relief" (Count XII), and punitive damages (Count XIII)[1].  ECF Dkt. #1 at ¶¶37-127.

## II.    LAW AND ANALYSIS

Plaintiff requests that the Court issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure in order to prohibit Defendants from "disposing of any and all of their assets, including without limitation those transferred to them by Horizon Medical Group, Inc., Med Fund LLC, and/or JFB Holdings, Inc., *without this Court's permission*, and further, prohibiting Defendants from disposing of the proceeds of the sale of the assets of Horizon Medical Group, Inc., Med Fund LLC, and/or the Individual LLCs which occurred on or about May 16, 2008."  ECF Dkt. #102 at 1 (emphasis in original).

In determining whether to issue a preliminary injunction, the Court must consider the following factors:

1.    whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

2.    whether the movant has shown irreparable injury;

3.    whether the issuance of a preliminary injunction would cause substantial harm to others;

4.    whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Assoc. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977)(citations omitted).  No single factor in this test is determinative and the Court must weigh each factor in light of the circumstances of the case.  *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-538 (6th Cir.

---

[1]    The Complaint contains two Count XII's.  The undersigned presumes that "punitive damages" was intended to be labeled as "Count XIII."  ECF Dkt. #1 at 15.

-3-

1978), *cert. denied*, 442 U.S. 925 (1979).  However,  "(i)n general, the likelihood of success that need be shown (for a preliminary injunction) will vary inversely with the degree of injury the plaintiff will suffer absent an injunction . . .A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury to the party seeking the injunction, and such an injunction must be vacated on appeal."  *Friendship Materials, Inc. v. Michigan Brick, Inc*., 679 F.2d 100, 104 (6th Cir. 1982).

At the outset, the undersigned questions the propriety of some of these claims as stated.  The Court has addressed this issue previously.  ECF Dkt. #31 at 16-18.  However, due to the distinction that must be drawn between equitable claims and legal claims, it is worth revisiting this issue for the purposes of this motion.  *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 325, 333 (1999) (holding that a district court had no authority to issue a preliminary injunction preventing defendants from disposing of their assets pending adjudication of the principal contract claim for money damages).  Generally, one does not state piercing the corporate veil as a legal claim, but as a theory of liability.  *See Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*,  617 N.E.2d 1075, 1085 (Ohio 1993) ("Under this exception, the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity. Courts will permit individual shareholder liability only if the shareholder is indistinguishable from or the 'alter ego' of the corporation itself."); *Trinity Health Sys. v. MDX Corp.*, 907 N.E.2d 746 754 (Ohio App. 7 Dist.,2009) (" 'Piercing the corporate veil' is not a cause of action in and of itself, but rather, is a legal rule or doctrine that permits a court to disregard the formal corporate structure so that individual shareholders may then be held liable for the actions of the corporation.").

-4-

Further, Plaintiff's complaint appears to contend that alter ego theory is a form of corporate veil piercing.  ECF Dkt. # 1 at ¶¶37-45.  The Sixth Circuit has stated that " veil piercing and alter ego concepts are distinct. The former asks a court to hold A vicariously liable for B's debts, while the latter asserts that A and B are the same entity and therefore liability is direct."  *In re Fisher*, 296 Fed.Appx. 494, 506 (6th Cir. 2008); *see also UAW v. Aguirre*, 410 F.3d 297, 302 (6th Cir.2005). In *Aguirre*,  the Sixth Circuit, relying upon Seventh Circuit precedent, determined that corporate veil piercing and alter ego theory are "very different concepts, " and the court was unaware of any legal authority holding otherwise.  *Aguirre*, 410 F.3d at 302.  However, the Supreme Court of Ohio explained the first element of the corporate veil-piercing test in *Belvedere* as follows: "the plaintiff must show that the corporation is so dominated by the shareholder that it has no separate mind, will, or existence of its own, and that injury or unjust loss resulted from the shareholder's control of the corporation. . . The first element is a concise statement of the alter ego doctrine; to succeed a plaintiff must show that the individual and the corporation are fundamentally indistinguishable. " *Belvedere*, 617 N.E. 2d at 1086;  *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 513 (Ohio 2008) (leaving first prong of *Belvedere* intact); *see also* ECF Dkt. #31 at 9.[2]  Therefore, it is unclear whether alter ego theory is a theory of recovery distinct from veil piercing or whether, under *Belvedere*, it is part of the first prong of the veil-piercing test.  Regardless, the undersigned notes that Plaintiff has filed one claim asserting both theories of liability in a series of averments intertwining the two theories.  This issue may have to be clarified and resolved at a later point.

---

[2]     Although the *Belvedere* court looked to Sixth Circuit precedent, it did so as Ohio's highest court. *Cf. Martin v. Hunter's Lessee*, 14 U.S. 304, 347-48 (1816) (recognizing that different judges of different courts may interpret the law differently).  Pursuant to the *Erie* doctrine, this Court is bound by the *Belvedere* court's statement of law when adjudicating a diversity suit.  *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Lastly, the undersigned notes that attachment, garnishment, appointment of a receiver, injunctive relief, and punitive damages are remedies typically sought in a prayer for relief, not principal claims.  *See*, *e.g., Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 650 (Ohio,1994)("Ohio, no civil action may be maintained simply for punitive damages. . . Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought."); ECF Dkt. #31 at 17 ("As Defendants correctly note, these counts are not independent causes of action, but rather forms of potential relief.").  Notwithstanding Plaintiff's judgment against the judgment-debtors, Plaintiff is not entitled to attachment of Defendants' personal assets, garnishment of funds held on their behalf or payable to them, appointment of a receiver with respect to Defendants, injunctive relief, or punitive damages, unless and until Plaintiff establishes that Defendants are personally liable for the 2007 judgment against the judgment-debtors.  Thus, these claims are dependent upon the success and merits of Counts II through VIII.

### a.  Whether Plaintiff has made a showing of irreparable injury

As noted above, irreparable injury and likelihood of success on the merits are inversely related.  Therefore, the undersigned will consider irreparable injury before determining the degree of success on the merits that Plaintiff must demonstrate.

Plaintiff contends that Defendants have exhibited a proclivity for transferring and disposing of assets, showing a high risk that they may transfer or dispose of the assets of the proceeds of the May 16, 2008 asset sale.  ECF Dkt. #41 at 14.  Plaintiff cites no law pertaining to this issue, opting to focus on arguing the likelihood of success on the merits.  *See* ECF Dkt.#41 at 14 (citing no caselaw); #102( arguing only the strength of the case).  However, the harm Plaintiff contemplates is not "irreparable" as the term is used in the context of preliminary injunctions.

-6-

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002).   "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  Further, the moving party must show that there is no other adequate remedy *at law*.  *U.S. v. Miami University*, 294 F.3d 797, 816(6th Cir. 2002) (emphasis added) citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-320 (1982) ("An injunction should issue **only where the intervention of a court of equity is essential** in order effectually to protect property rights against injuries otherwise irremediable. . . The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.") (emphasis added).

In *Grupo Mexicano*, the United States Supreme Court granted certiorari to determine:

> whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed.

*Id*.  The Court held that a district court had no authority to issue a preliminary injunction preventing defendants from disposing of their assets pending adjudication of the principal contract claim for money damages.  *Id*. at 333.  The Court reasoned, in part:

> The requirement that the creditor obtain a prior judgment is a fundamental protection in debtor-creditor law-rendered all the more important in our federal system by the debtor's right to a jury trial on the legal claim. There are other factors which likewise give us pause: The remedy sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance. Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available? More importantly, by adding, through judicial fiat, a new and powerful weapon to the creditor's arsenal, the new rule could radically alter the balance between debtor's and creditor's rights which has been developed over centuries through many laws-including those relating to bankruptcy,

-7-

fraudulent conveyances, and preferences. Because any rational creditor would want to protect his investment, such a remedy might induce creditors to engage in a "race to the courthouse" in cases involving insolvent or near-insolvent debtors, which might prove financially fatal to the struggling debtor.

*Id.* at 331. The Court further explained the timing of each party's rights in the assets subject to a litigation; specifically, a debtor maintains a possessory interest in his property until judgment and a creditor's interest does not attach until judgment is rendered:

> Our laws determine with accuracy the time and manner in which the property of a debtor ceases to be subject to his disposition, and becomes subject to the rights of his creditor. A creditor acquires a lien upon the lands of his debtor by a judgment; and upon the personal goods of the debtor, by the delivery of an execution to the sheriff. It is only by these liens that a creditor has any vested or specific right in the property of his debtor. Before these liens are acquired, the debtor has full dominion over his property; he may convert one species of property into another, and he may alienate to a purchaser. The rights of the debtor, and those of a creditor, are thus defined by positive rules; and the points at which the power of the debtor ceases, and the right of the creditor commences, are clearly established. These regulations cannot be contravened or varied by any interposition of equity'

*Id.* at n.6  quoting *Adler v. Fenton*, 24 How. 407, 411-412, 16 L.Ed. 696 (1861)  quoting *Moran v. Dawes,* 1 Hopk. Ch. 365, 367 (N.Y.1825).

However, the *Grupo Mexicano* Court noted that a distinction exists between claims for money damages and claims for equitable relief, like the Court had considered in *Deckert*. *Grupo Mexicano,* 527 U.S. at 325.[3]  In *Deckert*, the Supreme Court held that an injunction prohibiting liquidation of funds was appropriate, where the plaintiff demonstrated that the defendant was insolvent and its assets in danger of dissipation or depletion. *Deckert v. Independence Shares Corp.*,

---

[3]     The *Grupo Mexicano* Court quoted *Deckert:*
> The principal objects of the suit are rescission of the Savings Plan contracts and restitution of the consideration paid.... That a suit to rescind a contract induced by fraud and to recover the consideration paid may be maintained in equity, at least where there are circumstances making the legal remedy inadequate, is well established.
*Grupo Mexicano,* 527 U.S. at 325.

311 U.S. 282, 290 (1940).  However, the *Grupo Mexicano* Court noted that in *Deckert*, the Court "took pains to explain, the bill stated a cause of action for equitable relief," specifically, recision of a contract where there were circumstances making the legal remedy inadequate.  *Grupo Mexicano,* 527 U.S. at 325. (internal quotations omitted).  The *Grupo Mexicano* Court stated that "[t]he preliminary relief available in a suit seeking equitable relief [referring to *Deckert*] has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt [referring to *Grupo Mexicano*]."  *Id.*

 The issue in this case is whether Plaintiff's claims are legal or equitable in nature.  In making this determination, it is necessary to analyze the claims in the complaint and to review the law pertaining to fraudulent transfers in Ohio.  Plaintiff's complaint and brief raise inconsistencies as to the manner in which Plaintiff is suing Defendants.  Section 1336.08 of the Ohio Revised Code permits recovery of an asset from the transferee of a fraudulent transfer.  In Counts II through VIII of the complaint, Plaintiff seeks to recover under this section, making it appear as though Plaintiff has sued Defendants as transferees.  However, Plaintiff also alleges that Defendants are debtors because the judgment-debtors were merely Defendants' alter egos.  ECF Dkt. #41 at 8.  This averment makes it seem as though Plaintiff is pursuing a different theory of recovery.  Therefore, the instant complaint can be construed as raising two types of fraudulent transfer claims.

 First, the claims against Defendants (Counts II-VIII) can be viewed as seeking to impose personal liability for the 2007 judgments against the judgment-debtors, using either the alter ego theory or piercing the corporate veil *as a part of* a viable cause of action, such as fraudulent transfer.[4]  Second, the claims in Counts II-VIII can be construed as seeking to collect fraudulently

---

   [4]  Perhaps Plaintiff could use corporate alter ego theory or veil piercing to support other causes of action, but they are not pleaded in the complaint.  *See* ECF Dkt. #1.

transferred assets from Defendants as transferees.  Here, the undersigned notes that the complaint

alleges that Defendants transferred assets to third parties and received proceeds under the "2008

Transfer," as the phrase is defined in the complaint.  ECF  Dkt. #1 at ¶¶34-36.  In this way, it

appears that Defendants are being treated as intermediate transferees between the judgment-debtors

and the third party purchasers mentioned in the complaint.

The manner in which Plaintiff seeks recovery is not merely a matter of semantics.  Rather,

it has an effect on whether the remedies sought are equitable or legal in nature, as discussed below.

It should first be noted that an action to set aside a fraudulent transfer is equitable in nature.

*Shorten v. Woodrow*, 34 Ohio St. 645, 649, 1878 WL 71 (Ohio 1878).  However, under current Ohio

statutes, fraudulent transfers are considered "voidable," as opposed to being subject to an order

setting aside the transfer.  *See* O.R.C. §1336.08(B)(1).  The undersigned sees no reason as to why

this change in terminology would change the equitable nature of the remedy.   Under the Ohio

Uniform Fraudulent Transfer Act ("UFTA"), fraudulent transfers are defined in two different ways:

> The statutory elements of a fraudulent transfer under R.C. 1336.04(A)(1) include: (1)
> a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or
> delay; (3) present or future creditors.;
>
> By contrast, a claim under R.C. 1336.04(A)(2) requires that (1) the debtor made a
> transfer without receiving equivalent value and (2) the debtor either was engaged or
> was about to engage in a business or a transaction for which the remaining assets of
> the debtor were unreasonably small in relation to the business or transaction, or the
> debtor intended to incur, or believed or reasonably should have believed that he would
> incur, debts beyond his ability to pay as they became due.

*Brown Bark II, L.P. v. Coakley*, No. 09AP-950, 2010 WL 2638302 at *2(Ohio App. 10 Dist.,2010),

slip op. (internal citations omitted).  The undersigned adds to the foregoing that the UFTA

consistently defines fraudulent transfers as transfers made by debtors.  *See* O.R.C. §§1336.04(A),

-10-

1336.05, 1336.06.[5]  In fact, "knowledge on the part of the grantee of the grantor's actual fraudulent intent is not a necessary element of R.C. 1336.07."  *McKinley*, 585 N.E.2d at 500.  The transferee of the subject property is a necessary and proper party because the text of the Ohio UFTA provides for remedies and judgments against the transferee of the property.  *Brown Bark II,* 2010 WL 2638302 at *4.  Likewise, the debtor is a necessary and proper party, unless the debtor has conveyed its entire interest to the transferee and the court may fully determine the transferee's rights without the debtor's presence in the case.  *Id.* at *5.

The undersigned will first interpret the complaint as seeking to recover from Defendants in the place of the judgment-debtors.  *See* ECF Dkt. #41 at 8 (referring to Defendants as debtors).  The Court has previously stated that "Count I plays the preeminent role in this litigation."  ECF Dkt. #31 at 17.  Under this theory, Defendants cannot be held accountable as debtors unless and until a determination is reached as to the gateway or threshold legal issues of corporate alter ego theory or piercing the corporate veil.[6]  One district court considered a procedurally similar claim.  *See JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.*, 295 F.Supp.2d 366, 389, (S.D.N.Y.,2003).  In *JSC Foreign*, the court held that it was improper to enjoin individual defendants from disposing of their assets before the issue of corporate veil-piercing

---

[5]    Plaintiff attempts to include "defendants" as persons capable of effecting fraudulent transfers.  *See* ECF Dkt. #41 at 7 ("To establish a claim for fraudulent transfer under R.C. §1336.04(A)(1) a plaintiff must demonstrate that the debtor/defendant made the transfer(s) "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor. . . ."").  However, in the *McKinley* case that Plaintiff cites for this principle, the defendant at issue was a judgment debtor, so the terms were synonymous.  *McKinley Federal Sav. & Loan v. Pizzuro Enterprises, Inc.*, 585 N.E.2d 496, 498 (Ohio Ct. App., Cuyahoga County 1990).  In the case at bar, it has not been determined that Defendants are debtors in their personal capacities.

[6]    Although the undersigned noted ambiguity as to the state of the law regarding these doctrines, what is important for the purposes of this motion is whether Defendants have a personal liability for the 2007 judgment and whether the remedy sought from Defendants is equitable or legal in nature.

was determined.  *Id*.  The court acknowledged that "[t]he equitable relief that the plaintiff seeks, including the setting aside of alleged fraudulent conveyances, is incidental to, and indeed contingent upon the success of, the plaintiff's alter ego action."  *Id*.  The *JSC Foreign* court ultimately held that "[t]he alter ego action . . .  is an action for money damages, even though it is brought as part of an action to enforce a judgment. . . the final relief that the plaintiff seeks is the imposition of legal liability on Reich and Jossem for the money judgment against IDTS . . . A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by *Grupo Mexicano*."  *Id*.

A determination of these issues would be essential prior to holding Defendants liable in the place of the judgment-debtors.  However, Ohio does not recognize alter ego theory or corporate veil piercing as independent causes of action.  In contrast to New York, Ohio treats corporate veil piercing as an equitable doctrine.  *See Carter-Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 749 (6th Cir. 2001).

Nevertheless, Plaintiff's claims against Defendants in the place of the judgment-debtors are legal in nature, even if they incidentally involve application of an equitable doctrine.  In reaching this conclusion the undersigned considers the mechanics of voiding a fraudulent transfer.  The monies are allegedly held by Defendants in their capacity as transferees.  *See* ECF Dkt. #1 at ¶36 (alleging that Defendants received proceeds of the 2008 transfer).  If the transfers were to be voided, the funds would be directed from the transferees directly to the creditor, in this case, Plaintiff.  *Cf. Brown Bark II,* 2010 WL 2638302 at *5 (creditor is not always a necessary party).  The judgment-debtors would not regain title to the assets.  Thus, an equitable remedy (*i.e.*, voiding the transfer) would not operate to pay Plaintiff from assets held by Defendants in the place of the judgment-

debtors.  It would only operate to return the funds held by Defendants as transferees.  *See* O.R.C. §1336.08(B)(1).  Other remedies against Defendants in the place of the judgment-debtors remain available.  Here, the undersigned is only speaking to the effects that the equitable remedy of voiding the transfer will have on Plaintiff's ability to recover its legal debt.

Plaintiff may seek compensatory damages from Defendants under corporate veil piercing or alter ego theories.[7]  Since Plaintiff alleges that a fraudulent transfer occurred, the judgment-debtor entities cannot have title to the transferred assets; Defendants hold the proceeds of the transfers in the capacity of transferees.[8]  *See* ECF Dkt. #1 at ¶36.  It follows that a judgment against Defendants in place of the judgment-debtors cannot operate as an equitable measure to transfer the monies owed to Plaintiff.  Therefore any judgment against Defendants in the place of the judgment-debtors must be legal in nature.  This conclusion is supported by the plain language of Section 1336.08(B)(1), which states that a judgment may be entered against certain transferees.  Further, Ohio court cases have held that a debtor is not always a necessary party.  *See Brown Bark II,* 2010 WL 2638302 at *5.  If equity required fraudulently transferred assets to be returned to the debtor in order for the assets to be transferred to the creditor, then the debtor would be a necessary party.  However, that is apparently not the procedure under Ohio law because only the transferee is a necessary party where the debtor has relinquished all of its interests in the asset transferred.

---

[7]     See below, where the undersigned discusses other available remedies under the UFTA and whether Plaintiff is obligated to attempt to collect from the transferee before attempting to collect from the debtor in an action for fraudulent transfer.

[8]     While the judgment-debtors do not have title to the asset, they may still have an interest in it.  As discussed below, Plaintiff has a burden of establishing that the judgment-debtors have no interest in the property.

Additionally, an injunction is inappropriate because Plaintiff does not allege that Defendants are insolvent in their personal capacities.  *See QSI-Fostoria DC, LLC v. General Electric Capital Business Asset*, No. 3:02CV7466, 2005 WL 81902 at *5 (N.D.Ohio, Jan. 14, 2005), unreported (In the context of a claim for money damages: "While the inability to collect a money judgment may support a finding of irreparable harm in some circumstances, I do not find irreparable harm in this case. Even if [the defendant] distributes the settlement monies to its members, [the plaintiff] has presented no evidence that [the defendant] is insolvent. ");  *see also Deckert,* 311 U.S. at 288 ( in the context of an equitable claim: "We are of opinion that the bill states a cause for equitable relief. There are allegations that Independence is insolvent, that its business is practically halted, that it is threatened with many lawsuits, that its assets are endangered, and that preferences to creditors are probable. ").  Therefore, Plaintiff has failed to demonstrate irreparable injury and Plaintiff may be compensated by a monetary judgment against Defendants in their personal capacities.

Plaintiff does have ancillary claims for equitable relief in Counts IX-XIII, but the undersigned reiterates that those claims are not stand alone claims under Ohio law (*see* discussion above) and only exist as equitable tools for the assistance of the collection of a legal debt.  *See Grupo Mexicano,* 527 U.S. at 325.  Any other judgment against Defendants in the place of the judgment-debtors can be satisfied by a monetary judgment.

Having determined that Plaintiff's claim is legal in nature, the undersigned recommends that the Court find that Plaintiff has failed to establish irreparable injury.  Further, like *JSC Foreign*, there has not been a determination of liability made against Defendants in their personal capacities. Therefore, injunctive relief is not available.  *See Grupo Mexicano*, 527 U.S. at 333.

Considering the second possible interpretation of the complaint, it is possible that Plaintiff is seeking to collect the alleged fraudulently transferred assets directly from the transferees (*i.e.*, Defendants).  At this stage, the viability of such a claim in this particular case is unclear because the transferors and the sued transferees are identical – according to the complaint, Defendants acted as both transferors and transferees in some transactions.  In fact, as noted above, liability under corporate alter ego theory may be direct.  *See Fisher*, 296 Fed.Appx. at 506; *but see Belvedere*, 617 N.E. 2d at 1086.  Therefore, if the judgment-debtors were merely Defendants' alter egos, then could be treated as the same entity.  *Id.*  In that circumstance, is unclear why a fraudulent transfer claim would need to be proven.  Theoretically speaking, the money sought never left the entity comprised of Defendants and their alleged alter egos.  The complaint alleges that Defendants received proceeds of a transfer that exceeded the amount of the 2007 judgment.  *See* ECF Dkt. #1 at ¶¶35-36. Therefore,  if alter ego theory is in fact viable,[9]  it would appear that some type of claim seeking to collect directly from Defendants would be more appropriate than seeking to recover under a fraudulent transfer.  However, the stand alone claims before this Court are for fraudulent transfer. Therefore, the undersigned will constrain the following analysis to the claims stated in the complaint.

The elements of fraudulent transfer might be established without proving the elements of piercing the corporate veil and alter ego theory.  *Compare LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App. 3d 417, 602 N.E.2d 685, 689 (Ohio App. 1991);  *Belvedere*, 617 N.E. 2d at 1086;

---

[9]     There has been no determination as to Defendants' personal liability for the judgment-debtors debts.  *See  Grupo Mexicano,* 527 U.S. at n. 6; *JSC Foreign* 295 F.Supp.2d at  389.

*Dombroski*, 119 Ohio St. 3d at 513 *with* O.R.C. §1336.04.[10]  Therefore, Plaintiff might succeed on proving that a fraudulent transfer occurred without establishing the propriety of piercing the corporate veil or alter ego theory.  It follows that Plaintiff could seek to disgorge Defendants of the allegedly fraudulently transferred funds without establishing liability for the underlying 2007 judgment.  Perhaps the facts of this case and those identified as parties to the transactions happen to make the inquiries into alter ego theory/veil piercing and fraudulent transfer intersect.  However, it is important to note that the legal elements can be different.

        Although such a claim would be equitable in nature, the expected loss in this case is for a sum certain.  Therefore, it is fully compensable by a monetary judgment.  *See Basicomputer*, 973 F.2d at 511 ("an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate.").  Here, Plaintiff's contemplated injuries are not "otherwise irremediable."  *See Weinberger*, 456, U.S. at 312; *see also Deckert*, 311 U.S. at 289 ("That a suit to rescind a contract induced by fraud and to recover the consideration paid may be maintained in equity, *at least where there are circumstances making the legal remedy inadequate*, is well established.")(emphasis added).  Even if equitable relief is not provided (*i.e.*, voiding the fraudulent transfer), Plaintiff can be made whole by a monetary judgment against Defendants.  Notably, the only asset Plaintiff seeks to retrieve by voiding the fraudulent transfer is money, making the distinction between the equitable and legal remedies indistinguishable in this particular case.  Aside from an equitable remedy, Plaintiff's purported injuries could be redressed by a money

_____

[10]   Of note, alter ego theory, veil piercing and fraudulent transfer all require a showing of fraud. However, for the purposes of this motion, it is sufficient to observe that the inquiry may be different for each.  Alter ego theory and veil piercing inquire into Defendants' actions as individuals (*see LeRoux*, 602 N.E.2d at 689; *Belvedere*, 617 N.E.2d at 1086; *Dombroski*, 119 Ohio St. 3d at 513), while fraudulent transfer may also look to the judgment-debtor's activities as business entities.  *See McKinley*, 585 N.E.2d at 499.

judgment.  Therefore, Plaintiff has not shown a likelihood of irreparable injury.  *See Weinberger*, 456 U.S. at 311-320.

Although no single factor is determinative as to the appropriateness of equitable relief, the Sixth Circuit's holding in *Friendship Materials* states that a weak showing of irreparable injury requires an even stronger showing of success on the merits.  *Friendship Materials*, 679 F.2d at 102 (setting forth "strong or substantial likelihood or probability of success" standard), 105 (discussing inverse relationship between irreparable harm and showing of success on the merits).  In fact the *Friendship Materials* court noted that some circuits have now made it clear that the plaintiff *must always* demonstrate some irreparable injury before a preliminary injunction may issue.  *Id*. at 104 (emphasis added).  Since Plaintiff has not shown any irreparable injury with respect to its claims against Defendants in the place of the judgment-debtors, it is questionable that Plaintiff is entitled to a preliminary injunction based on this factor alone.  *See Grupo Mexicano*, 527 U.S. at 333; *Deckert*, 311 U.S. at 288.  The undersigned notes that *Grupo Mexicano* was decided by the U.S. Supreme Court after the Sixth Circuit decided *Friendship Materials*, and appears to dictate that a preliminary injunction is improper based solely on the lack of an equitable claim.  *See id*. at 324-25 (discussing *Deckert*).  Thus, Plaintiff's motion with respect to claims filed against Defendants in the place of the judgment-debtors should be denied based upon *Grupo Mexicano* and its progeny at this stage in the analysis.  However, if the Court proceeds to consider other factors, then Plaintiff should be held to establish *more* than a strong likelihood of success on the merits due to Plaintiff's weak showing of irreparable harm.  *See Friendship Materials*, 679 F.2d at 102, 105 (emphasis added).

To the extent that Plaintiff states an equitable claim against Defendants as transferees, the nature of the loss in this case is calculable.  Therefore, Plaintiff has not made a showing of irreparable injury with respect to these claims and the Court can deny Plaintiff's motion at this point in the analysis.  If the Court proceeds in the analysis, the undersigned recommends that the Court find Plaintiff's showing of an irreparable injury to be weak.  Therefore, Plaintiff should be held to show more than a strong likelihood of success on the merits with respect to these claims.  Nevertheless, the undersigned will give Plaintiff the benefit of the doubt and consider only whether Plaintiff has made a strong or substantial showing of a likelihood of success on the merits.

In sum, Plaintiff has not made the requisite showing of irreparable harm because all of Plaintiff's claims are calculable and redressable by a money judgment against Defendants.  Therefore, the undersigned recommends that the Court find injunctive relief to be inappropriate.

**b.    Whether Plaintiff has made a showing of a strong likelihood of success on the merits**

The undersigned first notes that Plaintiff's motion relies heavily on deposition testimony from Daniel Branch.  The undersigned had a difficult time locating these documents because they were not docketed in this case and Plaintiff first identified their location in a footnote in its reply brief.  ECF Dkt. #102 at n.1.  It was only at this point that the undersigned realized that the transcripts that Plaintiff had been quoting were filed under seal in the 2007 lawsuit.  ECF Dkt. ##282, 283 in  Case No. 5:07CV2035.  Further, Plaintiff's brief quotes the APA, which was also apparently  subject to a protective order.  It was improper for Plaintiff to quote these documents in an unsealed brief without seeking leave of Court.

Plaintiff contends that it is likely to succeed on the merits because Defendants exercised total or near-total control over Horizon and JFB Holdings, such that those entities had no mind, will or existence of their own.  ECF Dkt. #41 at 5.  The parties continue to disagree as to whether Ohio law or Delaware law applies with regard to corporate veil piercing.  In any event, Plaintiff has not demonstrated a strong or substantial likelihood of success on the merits, even under Ohio's more lenient standard.  The Court has already summarized the pertinent law in this regard.  *See* ECF Dkt. #31 at 8-10.

As noted above, the complaint can be construed as seeking to collect against Defendants for the liabilities of the judgment-debtors.  And, as noted above, this claim is legal in nature.  Therefore, Plaintiff has not shown an irreparable injury and must show more than a strong showing of a likelihood of success on the merits, if injunctive relief is appropriate at all.  *See Grupo Mexicano*, 527 U.S. at 333; *Friendship Materials*, 679 F.2d at 105.   However, Plaintiff has not directed the Court to any authority demonstrating that the UFTA permits a judgment to be entered against a debtor when a fraudulent transfer has occurred and the transferee holds title to the asset.

Section 1336.08(B)(1) of the Ohio Revised Code contemplates voiding the transfer and recovering the asset from the transferee.  In Counts II through VIII, Plaintiff seeks recovery under this section.  Plaintiff does not direct the Court to any law permitting recovery directly from the debtor for a fraudulent transfer.  While the undersigned has independently located authority permitting some forms of recovery directly from a debtor, it is unclear what Plaintiff seeks to recover from Defendants in the place of the judgment-debtors and what Plaintiff seeks to recover from them as transferees under avoidance of the transfer.

-19-

The UFTA provides remedies beyond voiding certain transfers. *See Blood v. Nofzinger,* 834 N.E.2d 358, 365 (Ohio App. 6 Dist.,2005). The Court should consider these remedies to the extent Plaintiff states a claim against Defendants in the place of the judgment-debtors. "The amount of damages recoverable will depend on the facts of each case and what is necessary to compensate the creditor for harm flowing from the fraud" and "it is well established that a person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered; that is, the damages sustained by reason of the fraud or deceit, and which have naturally and proximately resulted therefrom." *Id.* at 372 (internal quotation omitted). The Court may award punitive damages and attorneys' fees on a showing of actual malice when making the fraudulent transfer. *Id.* Moreover, a plaintiff may prove actual damages suffered as a result of the debtor's fraudulent transfer. *Id.* at 373.

Here, Plaintiff contends that post-judgment interests and costs are chargeable to Defendants. ECF Dkt. #1 at ¶¶17, 18. At this point, Plaintiff has not quantified this amount, but even if it had, it would be a fully compensable legal remedy, as discussed above. Therefore, Plaintiff is not entitled to injunctive relief related to these damages.

Further, Plaintiff has not demonstrated the propriety under Ohio law of collecting directly from Defendants in place of the judgment-debtors without first seeking to collect from them as transferees. It is questionable that such an action is proper because Ohio courts and other jurisdictions have held that a transferee who retains title to the property is a necessary and proper party to an action seeking to void or set aside a fraudulent transfer. *Brown Bark II*, 2010 WL 2638302 at *4-*5 (stating the debtor and transferee are both necessary parties unless the debtor has no interest in the asset transferred); *see also Dolce v. Lawrence*, No. 96-L-129, 1997 WL 286154

-20-

at *4 (Ohio App. 11 Dist.,1997).  Further, Plaintiff may not recover damages merely on a showing of corporate alter ego theory or veil piercing; Plaintiff must establish a tenable cause of action along with these theories.  The only stand alone claims that Plaintiff has stated are for fraudulent transfer.

With respect to a fraudulent transfer claim, Plaintiff has not shown a strong or substantial likelihood of success on the merits, regardless of whether Defendants are being sued on a corporate veil piercing/alter ego theory or as the transferees.  To the extent Plaintiff does seek equitable relief under the UFTA, it is important to note that Plaintiff has the burden of proving the elements of fraud by clear and convincing evidence.  *McKinley*, 585 N.E.2d at 499.  Therefore, Plaintiff must establish a strong or substantial likelihood of prevailing with a heightened burden of proof.  This means that Plaintiff's burden in seeking an injunction is more onerous than normal.

The judgment-debtors are necessary parties to this action unless Plaintiff establishes that they have no interest in the assets that were transferred.  *See Brown Bark II*, 2010 WL 2638302 at *4-*8. Plaintiff's claims are not stated against the judgment-debtor entities[11] and Plaintiff does not contend or demonstrate in its brief that Horizon, Med Fund, JFB holdings, and the Individual LLCs lack an

---

[11]    Plaintiff's corporate ego theory averment arguably treats Defendants as the same entity as the judgment-debtors.  *See Fisher*, 296 Fed.Appx. at 506; *but see Belvedere*, 617 N.E. 2d at 1086. However, in order to recover under an equitable remedy of voiding the transfer, which could entitle Plaintiff to injunctive relief, Defendants must be treated as transferees, not as the judgment-debtors.  Therefore, the undersigned concludes that the alter ego averments stated against Defendants are insufficient to name the judgment-debtors as parties in the equity claim.  And even if the averments were sufficient to name the judgment-debtors as parties, the strength of the case against them in that capacity has not been established at this point.  *See JSC Foreign* 295 F.Supp.2d at  389.  The undersigned notes that discovery has been open for three months.  *See* ECF Dkt. #66.  Plaintiff filed a motion for partial summary judgment on the issue of corporate veil piercing, arguing alter ego theory as well.  ECF Dkt. #62 at 7-11.  Plaintiff has since filed a motion to defer ruling on its motion, stating that it needed to conduct further discovery in order to support its motion.  ECF Dkt. #121, Ex. B.  The undersigned issued an order advising Plaintiff to withdraw the motion if it desired to supplement it with additional evidence.  ECF Dkt. #138.  Plaintiff then withdrew its motion.  ECF Dkt. #141.

interest in the property transferred.  *See* ECF Dkt. #41 at 15 (contending that the injunction is narrowly tailored to restrict only Defendants' conduct and will not restrict the activities of third parties or interfere with any legitimate interests.).  Without such an averment or showing, Plaintiff might not be able to void the alleged fraudulent transfers and collect from Defendants as transferees.  *See Brown Bark II*, 2010 WL 2638302 at *5.  In fact, Plaintiff's own briefs in this matter raise doubt as to whether Med Fund was paying Horizon's liabilities following one of the alleged fraudulent transfers:

> . . .Defendants retained Horizon's accounts, ledgers, and employees, and they caused Med Fund to pay certain of Horizon's liabilities and entered those payments upon Horizon's ledgers.

ECF Dkt. #41 at 8; *see also* ECF Dkt. #102 at 4-6.  It is even possible that Plaintiff's complaint could be dismissed pursuant to Federal Rule of Civil Procedure 19(a) for failing to join a necessary and indispensable party.  While the undersigned does not offer a recommendation as to whether the claim should be dismissed, the undersigned notes at this stage that the pleadings and briefs do not demonstrate that the debtor lacks an interest in the asset.

In sum, the only equitable claim is the claim against Defendants as transferees, and Plaintiff's complaint and motion lack sufficient averments and evidence to establish that the proper parties have been joined in this action with respect to the equitable claim.  Therefore, Plaintiff has not met its burden of establishing a strong likelihood of success on the merits.

**c.      Whether issuance of an injunction would cause harm to others**

As the *Grupo Mexicano* Court noted, the chance of harm to Defendants by issuing an injunction is substantial, particularly due to the amount of the judgment sought in this case, because the injunction could force Defendants into insolvency.  *See Grupo Mexicano,* 527 U.S. at 331; *see*

*also Virginia Carolina Tools, Inc. v. International Tool Supply, Inc.*, 793 F.Supp. 664, 669 (W.D.N.C.,1992 )("As to the balance of harm test, if the Defendants were precluded by a preliminary injunction from disposing of their assets pending the resolution of this dispute by trial and then possibly in an arbitration proceeding, the Court could very well be condemning the Plaintiffs to insolvency.").  Accordingly, the undersigned recommends that the Court finds this factor to weigh against issuing an injunction.

    **d.**       **Whether the public interest would be served by issuing a preliminary injunction**

        Plaintiff contends that the injunctive relief sought would further the established public policy of prohibiting litigants from willfully defying the judicial process, from defrauding creditors through devious asset transfers, and from abusing the corporate form to do so.  ECF Dkt. #41 at 15. Plaintiff's argument lacks merit because Defendants were not litigants in the underlying suit in their personal capacities.  They are not judgment debtors, and it has not been determined that they have committed any fraudulent transfers or abused the corporate form.  The crux of this lawsuit is whether personal liability exists for a corporate debt and whether a fraudulent transfer has occurred.  Until Plaintiff establishes such a case against Defendants, Plaintiff falls short of establishing that public policy is advanced by issuing an injunction.  In sum, Plaintiff attempts to argue that public policy is advanced by enjoining individuals from disposing of their personal assets before a judgment has been entered against them, when U.S. Supreme Court precedent stated that "[i]t was well established. . . that, as a general rule, a creditor's bill could be brought only by a creditor who had already obtained a judgment establishing the debt." *Grupo Mexicano,* 527 U.S. at 319.  There has

been no judgment establishing a debt with respect to Defendants.  Therefore, the undersigned recommends that the Court finds this factor to weigh against issuing an injunction.

> **e.      Consideration of the totality of the factors**

Considering all of the foregoing factors combined, the undersigned recommends that the Court find that a preliminary injunction is not appropriate in this case.

## III.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court DENY Plaintiff's motion for preliminary injunction.  ECF Dkt. #41.


DATE:  September 14, 2010                          ___*/s/George J. Limbert*_____
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).