UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HITACHI MEDICAL SYSTEMS AMERICA, INC., | ) | CASE NO.   5:09-CV-01575 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINON AND** |
| | ) | **ORDER** |
| | ) | |
| DANIEL BRANCH *et al*., | ) | |
| | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | | |

This matter is before the Court on an objection filed by Defendant Martin Kern (Doc. No. 192) to portions of the October 29, 2010, Order of the Magistrate Judge compelling certain document production (Doc. No. 185). Plaintiff filed a brief in opposition to Defendant Kern's objection (Doc. No. 199), and a subsequent motion for leave to file a supplement to that brief (Doc. No. 213); there being no objection, Plaintiff's motion for leave is **GRANTED**. For the reasons that follow, Defendant Kern's objection is **OVERRULED**.

**I. Factual and Procedural History**

Plaintiff Hitachi Medical Systems American, Inc. ("Hitachi") sells and services Magnetic Resonance Imagining ("MRI") equipment. Defendant Martin Kern is a shareholder and officer of Horizon Medical Group, Inc. ("Horizon"), along with Defendants Daniel Branch and David Branch. Horizon (not a named defendant in this case) is a former customer of Hitachi, having brought MRI equipment from Hitachi between 2002 and 2004.

In November 20008, Hitachi obtained judgments in the amount of $3,286,159.51 against Horizon and its associated individual LLCs, which remain unpaid. The alleged misconduct that forms the basis of the lawsuit here began in 2005 and was discovered by Hitachi in January 2009. In 2005, Hitachi alleges, Horizon transferred "all of Horizon's assets to its affiliate, Med Fund LLC" ("Med Fund"), an entity owned by JFB Holdings, Inc. ("JFB Holdings"). (Doc. No. 1 at ¶¶ 21-22.) Defendant Kern, along with Daniel and David Branch, are officers and shareholders of JFB Holdings and, according to Hitachi, are also owners of Med Fund. (*Id*. at ¶ 24.) Between 2005 and 2008, Med Fund assumed certain liabilities of Horizon. (*Id*. at ¶ 28.) In May 2008, Daniel Branch testified that Horizon was a going concern that paid its bills and would be able to pay its debts to Hitachi. (*Id*. at ¶ 30.) Shortly thereafter and while the Horizon litigation was still ongoing, the assets of Horizon, its individual LLCs, and Med Fund were sold to a third party purchaser. (*Id*. at ¶¶ 32-33.)

Hitachi filed the instant Complaint on July 9, 2009. The Complaint alleges that Horizon and JFB Holdings were the alter egos of Defendants. It further alleges that Defendants exercised total or near-total control of Horizon, JFB Holdings, and Med Fund, and used their control over these entities to (1) fraudulently transfer the assets of Horizon to Med Fund in 2005; (2) fraudulently transfer the assets of Horizon to themselves and others, generally raiding the company; (3) transfer the assets of Horizon's individual LLCs to a third party purchaser in 2008; and (4) transfer the assets of Horizon to a third party purchaser in 2008. (*Id*. at ¶¶ 40-41.) Hitachi brings the instant action under Ohio's Uniform Fraudulent Transfer Act. Specifically, Hitachi alleges causes of action against defendants pursuant to Ohio Revised Code § 1336.04(A)(1), § 1336.04(A)(2), and § 1336.05(A). On May 21, 2010, this case was referred to Magistrate Judge

Limbert for general pretrial supervision and for the preparation of a Report & Recommendation on any dispostive motions. (Doc. No. 68.)

The instant matter concerns a discovery dispute between Plaintiff and Defendant Kern. On July 16, 2010, Plaintiff moved to compel Defendant Kern to provide responses to certain discovery requests that Defendant Kern objected to primarily on the grounds of relevancy. (Doc. No. 115.) After acquiring an extension to respond to the motion to compel (July 21, 2010 Order), Defendant Kern filed a motion for Protective Order and Memorandum in Opposition to Plaintiff's Motion to Compel (Doc. No. 135).

On August 9, 2010, Magistrate Judge Limbert ordered that Plaintiff's Motion to Compel be stricken for failure to comply with Local Rule 37.1(a), and further ordered that Defendant Kern's Motion for Protective Order be denied, as moot. (Doc. No. 137.) Pursuant to that order, Plaintiff submitted a letter requesting that the Court conduct a telephone conference in an effort to settle the discovery dispute between the parties. (Doc. No. 165.) The parties participated in the requested conference on October 6, 2010. (October 7, 2010, Minutes of Proceedings.) On October 19, 2010, Magistrate Judge Limbert ordered Defendant Kern to produce certain disputed discovery on or before October 29, 2010. (Doc. No. 185; herein referred to as the "Order.")

Defendant Kern objects to the portions of the Order compelling him to produce: (1) all documents evidencing receipt of payments from Horizon, MedFund and JFG Holdings in 2002, 2003, 2009, and 2010; (2) all Defendant Kern's deposit slips for 2002 through the present day; and (3) documents evidencing banks, account numbers, CDs, saving bonds, safe deposit boxes, etc., from 2002 to the present. (*See* Doc. 192 at 4.)

**II. Law and Analysis**

3

When a party timely objects to a magistrate judge's order on a non-dispositive matter, the district judge must set aside any part of the order that is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). A finding is clearly erroneous "'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed […] the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one.'" *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, No. 1:96-cv1780, 2006 WL 456479, at * 1 (quoting *Heights Cmty. Congress v. Hilltop Reality, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)). In reviewing a magistrate judge's decision to determine whether it is "contrary to law," a district court is to apply the same standard the Sixth Circuit employs to review a district court's ruling on an evidentiary question, which is an "abuse of discretion" standard. An "abuse of discretion" occurs when a court "'improperly applies the law or uses an erroneous legal standard.'" *Id.* (quoting *United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir. 1992) (internal quotations omitted)). Defendant Kern timely objected so this Court shall examine each ground of his objection.

The scope of discovery is clearly defined by Fed. R. Civ. P. 26(b)(1), which states, in its entirety:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer*

4

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). For example, it is proper to deny discovery of matter that is relevant only "to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund*, 437 at 352. The scope of discovery is within the broad discretion of a district court. *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 354 (6th Cir. 1984).

    A.  <u>Temporal Scope</u>

Defendant Kern argues that the portion of the Order concerning the temporal scope was clearly erroneous. Mr. Kern asserts that only documents from 2004 through 2008 are relevant to Plaintiff's theory of piercing the corporate veil because Horizon first breached its contract with Hitachi in 2004, and all of Horizon's assets were sold in 2008. (*See* Doc. No. 192 at 5-6.)

Defendant Kern argues that Horizon's contract breach in 2004 is the basis of the prior action that Plaintiff is attempting to recover from Defendants in the instant action and, thus, any events that occurred before that breach are irrelevant. (*Id*. at 5.) Defendant Kern's argument, however, fails to address the complications posed by Plaintiff's theory that he is liable under the doctrine of piercing the corporate veil. A corporation's veil may be pierced and the individual shareholders held liable where:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.,* 67 Ohio St.3d 274, 288-89 (1993); *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 513 (2008). Concerning any evidence of corporate control in 2002 and 2003, the Magistrate Judge found such evidence relevant and

5

reasoned that "evidence sought prior to 2004 may establish the propriety of alter ego theory or corporate veil piercing because it could show comingling of funds or a disregard for the corporate entity." (Doc. No. 185 at 2-3.)

Moreover, Ohio's Uniform Fraudulent Transfer Act "covers claims of actual and constructive fraud against both existing and *future* creditors." *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d 651, 661 (1999) (emphasis added). In other words, since the contract between Horizon and Hitachi created payment obligations starting in 2002, evidence dating back to that period is relevant to Plaintiff's claims concerning alleged misdeeds that occurred in 2004 or later. Accordingly, the Magistrate Judge's recommendation concerning the production of evidence from 2002 and 2003 was not clearly erroneous.

Defendant Kern also argues that financial records after 2008 are irrelevant because "Horizon had no assets left to transfer, and because any transfers by Kern after May 2008 are relevant only to remedial measures and so are not discoverable at this stage of the litigation." (Doc. No. 192 at 6-7.) Mr. Kern further argued that to require him to disclose those financial records to Plaintiff before it proved that a fraud existed would be premature and unfair and cited *Non-Employees of Chateau Estates Resident Ass'n v. Chateau Estates, Ltd.*, No. 2005CA109, 2006 WL 2037256 (Ohio. Ct. App. July 21, 2006), in support of his assertion.

Ohio's Uniform Fraudulent Transfer Act permits a creditor to obtain judgment against "the first transferee of the asset […] or [a]ny subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." R.C. § 1336.08(B)(1)(b). Accordingly, the Magistrate Judge properly found that documents concerning 2008 were relevant and discoverable to Plaintiff's fraudulent transfer claims. (Doc. No. 185 at 3.) Moreover,

Plaintiff's supplemental brief discusses transfers of real property involving Kern in 2009 and 2010, which may be related to the assets gained by Horizon and Med Fund's sale, and furthermore demonstrates that Hitachi is entitled to discovery concerning transfer of assets after the sale in 2008.[1]

Further, the *Chateau Estates* case that Defendant Kern replies upon concerns the alleged fraudulent conveyance from one entity to another does not require a contrary conclusion. *See Chateau Estates*, 2006 WL 2037256, at *2. The court in *Chateau Estates* held that because the alleged transferee (Turner) had no legal or financial obligation to plaintiff and had not been the transferor of any assets, plaintiff was "not entitled to discovery of [the transferee's] financial and tax records under any circumstances." *Id*. at 2-3. Here, Defendant Kern is alleged to have both legal and financial obligations to Plaintiff. Additionally, if an alter ego is found or a corporate veil is pierced, Defendant Kern may be found to be a transferor, not just a transferee and, therefore, even under the holding in *Chateau Estates*, Defendant Kern's records are discoverable. This Court, therefore, finds that the Magistrate Judge's Order is not clearly erroneous concerning the production of Defendant Kern's financial documents after 2008, but, instead agrees that such documents are relevant to Plaintiff's fraudulent conveyance claims.

B.  Bank Records

Defendant Kern also objects to the portions of the Order concerning production of deposit slips or other bank records that demonstrate the source of funds deposited.[2] Defendant Kern has testified that he received disbursements as loan repayments and that the only record of

---

[1] As indicated by the discussion above, the Court's disposition of this issue would have been the same even without the supplemental authority.

[2] Defendant Kern requested this Court to order Plaintiff to reimburse Defendant Kern for costs in producing any deposit receipts. While there may be some merit to Defendant's argument, this Court declines to address this request, as such a request should be made before Magistrate Judge Limbert under this action's referral order (Doc. No. 68).

these loans exists in the bank records because no loan agreement was drafted. (*See* Doc. No. 185 at 4.) Accordingly, this Court agrees with the Magistrate Judge's conclusion that the documents at issue may be necessary to prove Plaintiff's fraudulent transfer claims and finds this portion of the Order is not clearly erroneous.

    C.  Other Private Banking Information

Finally, Defendant Kern objects to the portions of the Order requiring him to produce all documents evidencing or indicating, from 2002 until present, his place or places of banking, the types of bank accounts he had had, and the account numbers and designations of authority relating thereto. The nature of a fraudulent transfer claim is that the transfers are obscured. Documents that assist in unraveling the true beneficiaries of the sale of Horizon and Med Fund's assets are relevant to Plaintiff's theory of the case. Therefore, this Court finds this portion of the Order is not clearly erroneous.

### III. Conclusion

Defendant Kern has failed to demonstrate that any portion of the Order (Doc. No. 185) to which he has objected is clearly erroneous. Accordingly, Defendant Kern's objection (Doc. No. 192) is **OVERRULED**.

**IT IS SO ORDERED**.

Dated: January 11, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

9