PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HITACHI MEDICAL SYSTEMS AMERICA, INC., | ) ) ) | CASE NO. 5:09CV01575 |
| Plaintiff, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | |
| DANIEL BRANCH, *et al.*, | ) ) | **MEMORANDUM OF OPINION AND ORDER** (Resolving ECF Nos. 81, 97, 284, 325, and 326) |
| Defendants. | ) | |

(5:09CV01575)

I.  <u>Introduction</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  <u>Factual and Procedural Background</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     A.  The Parties and Companies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     B.  Hitachi's Previous Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.  Hitachi's Current Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  <u>Discussion</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     A.  Rule 72(b) Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     B.  Rule 56(c) Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     C.  Piercing the Corporate Veil under Ohio and Delaware Law . . . . . . . . . . . . . . . . . . . . . 11
          1.  Ohio Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.  Delaware Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     D.  Defendant Martin Kern's Partial Motion for Summary Judgment. . . . . . . . . . . . . . . . 13
          1.  Piercing the Corporate Veil of Horizon. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          2.  Piercing the Corporate Veil of JFB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     E.  Defendant David Branch's Partial Motion for Summary Judgment . . . . . . . . . . . . . . 18
     .  Plaintiff Hitachi's Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.  Corporate Entities Mind, Will, or Existence . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          2.  Fraudulent Transfer under Ohio Revised Code § 1336.04. . . . . . . . . . . . . . . . 20
          3.  Fraudulent Transfer under Ohio Revised Code § 1336.05 . . . . . . . . . . . . . . . 21

IV.  <u>Conclusion</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

(5:09CV01575)

## I. **Introduction**

Before the Court are the Report and Recommendations of Magistrate Judge George J. Limbert addressing Defendant Martin Kern's partial motion for summary judgment (ECF No. 81), *pro se* Defendant David Branch's partial motion for summary judgment (ECF No. 97), and Plaintiff Hitachi Medical Systems America, Inc.'s ("Plaintiff" or "Hitachi") motion for summary judgment (ECF No. 284). ECF Nos. 325, 326.

In summary, Magistrate Judge Limbert recommends that the Court (1) deny Defendant Kern's partial motion for summary judgment as it relates to piercing the corporate veil of Horizon and grant it as to piercing the corporate veil of JFB (ECF No. 326); (2) deny Defendant David Branch's partial motion for summary judgment as moot; and, (3) deny Plaintiff's motion for summary judgment to pierce the corporate veils of Horizon and JFB (ECF No. 325). Defendant Kern timely filed objections to the relevant Report and Recommendation (ECF No. 336), and Plaintiff filed a response in opposition (ECF No. 344). Plaintiff also timely filed an objection to the Report recommending denial of its motion for summary judgment (ECF No. 350). Defendant David Branch was not permitted to file a response in accordance with the Court's Order, which states in pertinent part: "[p]ursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii) Defendant David Branch is prohibited from supporting or opposing all claims or defenses and from introducing any evidence in the case at bar." ECF No. 295 at 11.

The Court has conducted its *de novo* review of the Reports and Recommendations and the matters raised in the objections, pursuant to Federal Rule of Civil Procedure 72(b)(3). For the reasons set forth below, the Report and Recommendations are either adopted or modified, as

(5:09CV01575)

described herein.

## II.  Factual and Procedural Background

The relevant factual and procedural background from the Reports and Recommendations are described below (ECF Nos. 325; 326).

### A.  The Parties and Companies

This action arises out of a business relationship between Plaintiff Hitachi, Horizon, and its affiliated companies (the "LLC's").  Hitachi, a Delaware corporation, sells Magnetic Resonance Imaging ("MRI") equipment and provides related services.  ECF No. 1 at 2, ¶ 11. Horizon provided management services, including transcription, billing, collection, personnel, and accounting to the LLC's, which operated as individual MRI centers in Florida, Georgia, and Texas.  ECF Nos. 285 at 7-8.  Med Fund was a holding company for the various MRI centers.[1] ECF No. 281-1 at 46.

Defendant Daniel Branch was a twenty percent shareholder and Chief Financial Officer of Horizon at all times relevant to the complaint.  ECF Nos. 1 at 3, ¶ 13; 80-1 at 2, ¶ 3. Defendant David Branch was a thirty-three percent shareholder and Chief Executive Officer of Horizon at all times relevant to the complaint.  ECF Nos. 1 at 3, ¶ 14; 80-1 at 2, ¶ 3.  Defendant Martin Kern was a fifteen percent shareholder and officer of Horizon at all times relevant to the complaint.  ECF Nos. 1 at 3, ¶ 15; 80-1 at 2, ¶ 3.

The ownership structure of Horizon and JFB are identical, and, consequently, Defendants

---

[1]  In 2005, Horizon terminated its business operations, and Defendants "streamlined the operations [of Horizon] into Med Fund." ECF No. 281-2 at 13.  Thereafter, Defendants merged Horizon into Med Fund.  ECF No. 281-2 at 26.

4

(5:09CV01575)

are majority shareholders of JFB Holdings.  ECF No. 85 at 31.

In 2002, 2003, and 2004, Hitachi and Horizon entered into a number of four-year Service

Maintenance Agreements for services Hitachi performed at, and for the benefit of, numerous

Horizon MRI centers.  ECF Nos. 1 at 2-3; 41-1 at 1, ¶ 3.  At the beginning of 2004, Horizon

breached its obligations under the contracts by failing to make required payments, eventually

prompting Hitachi to initiate litigation.  ECF No. 41-1 at 1-2, ¶¶ 5-8, 10.

**B.  Hitachi's Previous Litigation**

Hitachi filed a civil action against eighteen business entities including Horizon, the

LLC's, and Med Fund (owner of all the LLC's), as well as four individuals, including the

Branches.  In addition to the breach of contract and unjust enrichment claims asserted against the

business defendants, Hitachi charged the Branches with fraud.  Hitachi subsequently filed an

amended complaint that restated the claims alleged in the original complaint and, additionally,

sought to pierce the corporate veil of Horizon.  S*ee Hitachi Medical Systems America, Inc. v.

Horizon Medical Group et al.,* Case No. 5:07CV02035 (J. Lioi).

Judge Lioi entered summary judgment in favor of the Branches and explained in pertinent

part:

> Piercing the corporate veil operates as an exception to the general rule that
> shareholders are not personally liable for the debts of a corporation.  *See Dole
> Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).  Courts in Ohio apply a
> three-prong test for determining whether to pierce the corporate veil.  *Belvedere
> Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc*., 67 Ohio St. 3d 274, 289
> (1993).  [T]he Ohio Supreme Court in *Dombroski* held that 'to fulfill the second
> prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must
> demonstrate that the defendant shareholder exercised control over the corporation
> in such a manner as to commit fraud, an illegal act, or a similarly unlawful act.'
> 2008 WL 4443943, at *7.

(5:09CV01575)

> Contrary to Hitachi's contention, no conceivable reading of *Dombroski* would permit Hitachi to exercise the veil-piercing remedy based upon such claims.

Case No. 5:07CV02035; ECF No. 216 at 3-5.

Despite the dismissal of the fraud claims against the Branches, Judge Lioi observed, in *dicta*, that a successful fraudulent conveyance claim could demonstrate the requisite fraud for the veil piercing theory of liability:

> In [Hitachi's] only colorable argument with respect to piercing the corporate veil, [Hitachi] argues that a veil-piercing claim could be appropriate if the Branches fraudulently transferred the Horizon entities' assets in order to avoid payment of creditors. A fraudulent conveyance claim, if successfully proved, likely could sustain a claim for piercing the corporate veil under [Ohio law.]

Case No. 5:07CV02035; ECF No. 216 at 5.  Hitachi raised the fraudulent conveyance allegations in a motion to compel discovery.  Because Hitachi did not seek to amend its complaint to add a fraudulent conveyance claim, the Court ultimately denied the motion to compel because the discovery sought by Hitachi was not relevant to the remaining breach of contract and unjust enrichment claims.  Case No. 5:07CV02035; ECF No. 216 at 5.

The Court ultimately entered a judgment in favor of Hitachi and against Horizon for the breach of contract claim in the amount of $2,823,783.80, and judgments in favor of Hitachi and against the LLC's totaling $462,375.71.  *See* ECF Nos. 251, 252.  The 2008 judgments remain unpaid.  ECF No. 41-1 at 2, ¶ 12.

### C.  Hitachi's Current Litigation

The instant case arises out of a series of allegedly fraudulent transfers made by Defendants Martin Kern, David Branch, and Daniel Branch in an attempt to obscure assets and avoid paying debts owed to Hitachi.  ECF Nos. 1; 284 at 5.

6

(5:09CV01575)

After the close of discovery, Defendant Kern filed a partial motion for summary judgment advancing the following arguments:  (1) There is no evidence that Kern exercised the dominion or control over Horizon Medical, and, therefore, he should not be personally liable for the corporate debt to Hitachi; and, (2) Hitachi has failed to produce any evidence in support of the veil piercing remedy as it applies to JFB Holdings.  ECF No. 81.

In the Report and Recommendation, the magistrate judge recommends that the Court deny Defendant Martin Kern's partial motion for summary judgment as it relates to piercing the corporate veil of Horizon and grant as to piercing the corporate veil of JFB.  ECF No. 326. Defendant Kern objects to the Report and Recommendation by alleging that the magistrate judge erroneously concluded that a genuine issue of material fact exists as to piercing the corporate veil of Horizon.  ECF No. 336.

Hitachi asserts in its motion for summary judgment that Horizon and the LLC's were rendered judgment-proof as a result of several fraudulent asset transfers executed "by and to the Defendants" between 2005 and 2008, and seeks to pierce the corporate veil of Horizon and JFB, based upon the evidence of fraud, in order to recover the 2008 judgments personally from Defendants.  ECF Nos. 325 at 5; 284 at 3.

In the report, the magistrate judge recommended that the Court deny Hitachi's motion for summary judgment.  ECF No. 325.  Hitachi filed a motion for reconsideration, ECF No. 337, which the magistrate judge denied, ECF No. 343.  Hitachi now objects to the Report and Recommendation and the denial of its motion for reconsideration alleging that Hitachi is entitled to summary judgment based on (1) Defendant Branch's discovery non-compliance and (2)

7

(5:09CV01575)

Hitachi has established the requisite elements to pierce the corporate veil of Horizon. ECF No. 350 at 1.

### III. Discussion

#### A. Rule 72(b) Standard

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(c), the District Court shall review *de novo* any finding or recommendation of the magistrate judge's Report and Recommendation that has been specifically objected to. The District Court need only review the magistrate judge's factual or legal conclusions that are specifically objected to by either party. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Local Rule 72.3(b) reads in pertinent part:

> The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

#### B. Rule 56(c) Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions, and provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law . . . .

Rule 56(c)(1) specifies the materials properly submitted in connection with a motion for summary judgment:

> (A) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing particular parts of materials in the record, including

8

(5:09CV01575)

> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations . . ., admissions,  interrogatory answers, or other
> materials; or (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce admissible
> evidence to support the fact.

Rule 56(e) recites that, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion."  The movant, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Upon review, the Court must view the evidence in light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *see also White v. Turfway Park Racing Ass'n*., 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Moreover, "the

(5:09CV01575)

trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine

issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)

(citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving

party is under an affirmative duty to point out specific facts in the record that create a genuine

issue of material fact.  *Fulson v. Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992).  The non-movant

must show more than a scintilla of evidence to overcome summary judgment; it is not enough for

the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id*.

### C.  Piercing the Corporate Veil under Ohio and Delaware Law

While the parties contest whether Ohio or Delaware law applies as to the veil piercing

remedy.  Neither Ohio nor Delaware law changes the outcome.  ECF Nos. 81 at 5-11; 284 at 12-

14; *see Joostberns v. United Parcel Serv., Inc.*, Case No. 04-2370 2006 WL 41189, at * 11 (6th

Cir. Jan. 9, 2006) ("Because the substantive choice of law does not alter the outcome of this case,

the court does not find it necessary to decide this.").

#### 1.  Ohio Law

Under Ohio law, a corporation's veil may be pierced, and the individual shareholders held

liable, where: (1) the shareholders to be held liable exercised control over the corporation such

that it had no mind, will, or existence of its own, (2) the shareholders used their control over the

corporation to commit fraud, an illegal act, or a similarly unlawful act, and (3) the plaintiff

suffered injury or unjust loss as a result.  *Belvedere Condominium Unit Owners' Ass'n v. R.E.*

*Roark Cos.*, 67 Ohio St. 3d 274, 288-89 (1993); *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d

506, 513 (2008).  "There is no precise test to determine whether the elements required to

(5:09CV01575)

pierce the corporate veil have been satisfied, and each case should be 'regarded as 'sui generis' and decidable on its own facts.'" *Lesick v. Medgroup Mgmt.*, 1999 Ohio App. LEXIS 5049 (Ohio Ct. App., Oct. 29, 1999) (quoting *Bucyrus-Erie Co. v. General Products Corp.*, 643 F.2d 413, 418 (6th Cir. 1981)).  "The test set forth in *Belvedere* is open-ended and versatile, *i.e.*, it permits and encourages flexibility by its very definition." *Music Express Broad. Corp. v. Aloha Sports, Inc.*, 161 Ohio App. 3d 737, 742 (Ohio Ct. App., Geauga County 2005).

The first element is a restatement of the alter-ego doctrine, requiring that a plaintiff "show that the individual and the corporation are fundamentally indistinguishable." *Belvedere Condominium Unit Owners' Ass'n*, 67 Ohio. St. at 288.  In deciding an individual shareholder exercised control over the corporation such that it had no mind, will, or existence of its own, Ohio courts consider such factors as:  (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).  *Microsys Computing, Inc. v. Dynamic Data Sys., Inc.*, 2006 U.S. Dist. LEXIS 53397, at *20 (N.D. Ohio Aug. 2, 2006); *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (citing *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App. 3d 417, 422 (1991)).

### 2.  Delaware Law

Delaware courts look to many of the same factors as Ohio courts, including whether:  (1) corporate records were kept, (2) corporate formalities were observed, (3) officers and directors

11

(5:09CV01575)

functioned properly, (4) the dominant shareholder(s) siphoned corporate funds, and, (5) the corporation was a mere facade for the dominant shareholder(s). *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988). The Delaware courts explain that a plaintiff must demonstrate a level of complete domination and control by the shareholder over the corporation in order to state a cognizable claim to pierce the corporate veil. *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999). "There also must be an element of fraud to justify piercing the corporate veil." *Case Financial, Inc. v. Alden*, Case No. 1184-VCP 2009 WL 2581873, at *4 (Del. Ch. 2009) (citing *Mason v. Network of Wilmington, Inc.*, Case No. 19434-NC 2005 WL 1653954, at *3 (Del. Ch. 2005)).

Because neither Kern or Hitachi objected to the law relative to veil piercing relied upon in the Report and Recommendation docketed at ECF No. 326,[2] no further discussion of the choice of law issue is undertaken.

**D. Defendant Martin Kern's Partial Motion for Summary Judgment**

In his partial motion for summary judgment, Defendant Kern argues that Hitachi failed to submit evidence to prove its allegations that Kern exercises dominant control over Horizon and JFB. ECF No. 81 at 9. Kern objects to the magistrate judge's recommendation that the corporate veil of Horizon be pierced. ECF No. 336. Hitachi objects to the magistrate judge's recommendation that the corporate veil of JFB not be pierced. ECF No. 352. The Court addresses the piercing the corporate veil of each entity separately.

---

[2] In fact, both Kern and Hitachi rely upon *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roard Cos.*, 67 Ohio St.3d 274 (Ohio 1993) and *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506 (Ohio 2008).

12

(5:09CV01575)

### 1.  Piercing the Corporate Veil of Horizon

In his partial motion for summary judgment, Defendant Kern argues that Hitachi failed to

submit evidence to prove its allegations that Kern exercised dominant control over Horizon and

JFB.  ECF No. 81 at 2.  To illustrate his lack of control, Kern highlights the following statements

taken from his own affidavit:  (1) Kern was a shareholder of Horizon from its inception in 1998

(ECF No. 80-1 at 1, ¶ 2); (2) Kern's recollection is that he was president of Horizon from 1998 to

2000 or 2001, after which he became senior vice president, which was a job title, not a corporate

officership (ECF No. 80-1 at 1, ¶ 2); (3) Kern "never" participated in corporate decision making

regarding corporate management, strategy, finances, allocation of resources, or sales of assets at

Horizon (ECF No. 80-1 at 2, ¶ 4); (4) Kern remained uninvolved in the 2005 transfer as well as

the 2008 transfer, and Kern was unaware of the status of Horizon's debt to Hitachi until the

breach of contract/unjust enrichment lawsuit was filed (ECF No. 80-1 at 3, ¶¶ 7-8); and, (5)

Kern's role with Horizon was to develop employee training programs, and to train and monitor

the sales and marketing employees of the MRI centers managed by Horizon (ECF No. 80-1 at 2,

¶ 5).[3]  Kern, therefore, argues that under either Ohio or Delaware law, his peripheral involvement

---

[3]  The Report and Recommendation further explained:

At a deposition conducted on March 21, 2007, for the purpose of the breach of
contract/unjust enrichment action, David stated that Kern's responsibilities at the
companies were limited to sales and marketing. [ECF No. 287 at 32.]  Likewise,
Kern offered the affidavits of Daniel and Michael Lacenere, wherein both men
stated that Kern's primary role with the companies was marketing and training.
[ECF Nos. 277, 278.]  Both men further stated that Kern did not dominate or
control the management or decision making for the companies. [ECF Nos. 277,
278.]  According to Lacenere, Kern's role as president of the company was largely
titular and predicated upon his age (he was the oldest of the shareholders) and his

(5:09CV01575)

does not demonstrate control. ECF No. 81 at 10.

In opposition, Hitachi argues that the record directly contradicts Kern's allegations. According to Horizon's annual reports filed with the Florida Division of Corporations, Kern served as Horizon's president from 1999 through 2007. ECF Nos. 281 at 6; 121-1 at 1-10. Hitachi further alleges that Kern executed contracts with Hitachi in his capacity as president of Horizon and executed an investment contract issued by Horizon to a citizen of Alabama. ECF Nos. 281 at 6; 281-4; 281-5 at 3, ¶ 9. Hitachi avers that Kern demonstrated control when he directed Horizon staff on billing procedures related to MRI's performed by Horizon. ECF No. 281-6.

Hitachi also argues that according to the *alter ego* doctrine, Horizon's corporate form may be disregarded and Kern held personally liable because Kern and Horizon are fundamentally indistinguishable. ECF No. 281 at 18. Hitachi further contends that the record reflects Kern's domination and control of Horizon in that: (1) Kern did not observe corporate formalities when he failed to properly wind up Horizon's corporate affairs (ECF No. 281 at 17); (2) Kern failed to keep corporate records of the amount of money Kern loaned to Horizon (ECF Nos. 281 at 7; 80-1 at 3, ¶ 6); (3) Kern commingled his personal funds with corporate funds (ECF Nos. 281 at 18; 291 at 4); (4) Horizon was inadequately capitalized at all times between its formation in 1998 and its closure in 2005 because it did not generate enough income to pay its obligations on a

---

"dignified appearance." [ECF No. 278.] Daniel corroborated Kern's statements regarding his short-term and undocumented loans to Horizon Medical to cover payroll due to the financial downturn Horizon Medical suffered in 2005. [ECF No. 277.]

(5:09CV01575)

regular basis (ECF No. 281 at 18); and, (5) Horizon was insolvent at the time it incurred its debt

to Hitachi (ECF No. 281 at 18).

In reply, Kern argues that the corporate forms and administrative order are inadmissible

for the purpose of summary judgment and should not be considered.  ECF No. 291 at 3.  To the

contrary, the magistrate judge recommends that the Court overrule Kern's objections for the

following reasons:

> [T]he revised civil rule of procedure only requires that Hitachi show that the
> material cited can be presented in a form that would be admissible in evidence.
> Fed. R. Civ. P. 56(c)(2). The 2010 amendment notes [state], in pertinent part,
> 'Subdivision (c)(2) provides that a party may object that material cited to support
> or dispute a fact cannot be presented in a form that would be admissible in
> evidence. The objection functions much as an objection at trial, adjusted for the
> pretrial setting. The burden is on the proponent to show that the material is
> admissible as presented or to explain the admissible form that is anticipated.' *Id.*
> In the surreply, Hitachi asserts that the evidentiary foundation will be established
> through witness testimony at trial. [ECF No. 303 at 3].

ECF No. 326 at 13-14.[4]  Kern alleges that the documents that Hitachi relies on does not

illustrate that Kern is "fundamentally indistinguishable" from Horizon.  ECF No. 291 at 6.  Kern

further asserts that if he were "fundamentally indistinguishable" from Horizon, then Hitachi

"should be able to flood the record with documentary and testimonial evidence of Kern's

---

[4]  The Court agrees with the magistrate judge's recommendation.  The non-movant's
submissions opposing a motion for summary judgment need not be in a form that is admissible at
trial.  *Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce
evidence in a form that would be admissible at trial in order to avoid summary judgment.").
Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not
suffice because affidavits are out-of-court statements that may not be admissible at trial.  *See*
Fed.R.Evid. 801(c), 802.  In its sur-reply, Hitachi has shown that its accompanying materials are
admissible as presented or  explained the admissible form that is anticipated.  *See* ECF No. 297-1
at 2-3.

(5:09CV01575)

dominant control."  ECF No. 291 at 6.

Upon review, the Court finds that Hitachi, the non-moving party, satisfied its affirmative duty to point out specific facts in the record that create a genuine issue of material fact as to whether Kern controlled Horizon to the extent that the company had no separate mind, will, or existence of its own, warranting piercing Horizon's corporate veil.  Summary judgment on this issue is, therefore, improper.  Kern's objection is overruled and the Report and Recommendation (ECF No. 326) adopted as to this issue.

### 2.  Piercing the Corporate Veil of JFB

Defendant Kern also argues that Hitachi has failed to state a viable claim to pierce JFB's corporate veil because (1) JFB is not a party to this cause of action, (2) Hitachi has no judgment against JFB, and (3) veil piercing is not a cause of action, but rather a remedy.  ECF Nos. 81 at 11; 31 at 17; *see also* *In re RCS Engineered Products Co. v. Himmelspach*, 102 F.3d 223, 226 (6th Cir. 1996) ("[A]n *alter ego* claim is not by itself a cause of action.").

In response, Hitachi alleges that Kern cannot demonstrate that there are no genuine issues of material fact because JFB was "instrumentality involved" in the 2008 transfer of the Horizon/Med Fund assets and Kern was a shareholder of JFB.  ECF No. 281 at 21.

Further, Hitachi objects to the magistrate judge's recommendation to grant summary judgment permitting the piercing of the corporate veil as it pertains to JFB because the magistrate judge improperly premised its recommendation upon the fact that JFB is not Hitachi's judgment debtor and, in Hitachi's eyes, mistakenly focused on whether JFB engaged in fraud.  ECF No. 352 at 2.  Believing there to be a genuine issue of material fact, Hitachi argues that Kern used his

16

(5:09CV01575)

control over JFB to commit fraud, an illegal act, or a similarly unlawful act.  ECF No. 352 at 2-3.

Hitachi explains the following:

> Kern used his control over JFB to fraudulently transfer the assets of HMSA's
> judgment debtors (Horizon and the Individual LLCs), while HMSA's prior
> lawsuit was pending. The scheme to sell Horizon and the Individual LLCs to
> defraud HMSA was complex and multi-tiered, and the way that Defendants were
> able to control Med Fund and covertly sell the assets of Horizon/Med Fund and
> the Individual LLCs was by acting through JFB. Kern was a shareholder and
> director of JFB. (Req. for Admiss. Nos. 11, 13, pp. 5-6 and Answer to Interog.
> No. 6, p.13, ECF Dkt. #281-3.)
>
> JFB owned 65% of Med Fund, thus giving Kern and Defendants David Branch
> and Daniel Branch an ownership interest in and control over Med Fund by virtue
> of their ownership interest in and control of JFB.

ECF No. 352 at 3-4.

The Court finds that the facts and circumstances of this case, viewed in light most

favorable to Hitachi, do not demonstrate a genuine issue as to any material fact relative to the

piercing of JFB's corporate veil nor is a judgment as a matter of law mandated.  Hitachi had the

burden to show, by affidavit or otherwise, that a genuine issue of material fact remains for the

factfinder to resolve.  *Celotex Corp.*, 477 U.S. at 323; *see also Beard v. Banks*, 548 U.S. 521, 529

(2006).  The applicable standard required Hitachi to "show that the individual and the

corporation are fundamentally indistinguishable[,]" such that the JFB had no mind, will, or

existence of its own.  *See Belvedere Condominium Unit Owners' Ass'n*, 67 Ohio. St. at 288.

Hitachi failed to establish that standard.  Defendant Kern's alleged "ownership interest and

control" in JFB through Med Fund does not demonstrate that JFB had no mind, will, or existence

of its own.  Therefore, this first element is not established.  Moreover, Hitachi has not shown that

JFB's alleged instrumental involvement in the 2008 transfer and Kern's majority shareholder

(5:09CV01575)

status of JFB rises to the level of a genuine issue of material fact.  *See Anderson*, 477 U.S. at 252

(explaining that a genuine issue is not created by a mere "scintilla" of favorable evidence).

Summary judgment in Defendant Kern's favor as to piercing the corporate veil of JFB is,

therefore, appropriate.  Hitachi's objection is overruled and the report and recommendation (ECF

No. 326) is adopted as to this issue.

### E.  Defendant David Branch's Partial Motion for Summary Judgment

Based upon the Court's April 5, 2011 Order prohibiting Defendant Branch from

supporting or opposing all claims or defenses and from introducing any evidence in the case at

bar, the Court adopts the magistrate judge's recommendation to deny Defendant Branch's motion

for summary judgment as moot.[5]  ECF No. 325.

### F.  Plaintiff Hitachi's Motion for Summary Judgment

As previously stated, a corporation's veil may be pierced, and the individual shareholders

held liable, when: (1) the shareholders to be held liable exercised control over the corporation

such that it had no mind, will, or existence of its own, (2) the shareholders used their control over

the corporation to commit fraud, an illegal act, or a similarly unlawful act, and (3) the plaintiff

suffered injury or unjust loss as a result.  *Belvedere Condominium Unit Owners' Ass'n v. R.E.*

*Roark Cos.*, 67 Ohio St. 3d 274, 288-89 (1993); *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d

506, 513 (2008).

In its motion for summary judgment, Hitachi argues that Horizon and JFB are the *alter*

*egos* of Defendant David Branch because (1) the corporate entities had no mind, will, or

---

[5] *See* clarification of this ruling docketed at ECF No. 371.

18

(5:09CV01575)

existence of their own; (2) Defendant Branch used his control over Horizon and JFB to commit

fraud or a similarly unlawful act; and, (3) Hitachi suffered an unjust loss as a result.  ECF No.

284 at 15-19.

### 1.  Corporate Entities Mind, Will, or Existence

Hitachi contends that the corporate entities had no mind, will, or existence of their own

because Horizon was undercapitalized, insolvent at the time it incurred its debt to Hitachi, and

Defendant Branch did not observe the corporate formalities.  ECF No. 284 at 15, 17. Specifically,

Hitachi claims that Defendant Branch (1) failed to properly wind up Horizon's corporate affairs,

(2) continued to himself out as Horizon after the company ceased operating, and (3) commingled

funds.  ECF No. 284 at 15-16. Hitachi further argues that Defendant Branch used his control over

the corporations "to commit fraudulent transfers of the assets of Horizon and the Individual

LLC's[,]" pursuant to Ohio Revised Code §§ 1336.04 and 1336.05.  ECF No. 284 at 18.

### 2.  Fraudulent Transfer under Ohio Revised Code § 1336.04

Ohio Revised Code § 1336.04(A)(1) provides that "[a] transfer made . . . by a debtor is

fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was

made . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any

creditor of the debtor."  Because actual intent may be difficult to prove, a creditor may establish a

debtor's fraudulent intent when the circumstances demonstrate the badges of fraud set forth in

R.C. § 1336.04(B).  *UAP–Columbus JV326132 v. Young*, Case No. 09AP-646 2010 WL 532442,

at *9 (Ohio App. Dist. Feb. 16, 2010).  The statutory list of badges of fraud includes, but is not

limited to:

(5:09CV01575)

> (1) Whether the transfer or obligation was to an insider;

> (2) Whether the debtor retained possession or control of the property transferred after the transfer;

> (3) Whether the transfer or obligation was disclosed or concealed;

> (4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

> (5) Whether the transfer was of substantially all of the assets of the debtor;

> (6) Whether the debtor absconded;

> (7) Whether the debtor removed or concealed assets;

> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

> (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

*See* R.C. § 1336.04(B).  Hitachi's argument, as it relates to fraudulent transfers, is as follows:

> There are ample badges of fraud attendant to Defendants' 2008 transfer of the assets of Med Fund, Horizon, and the Individual LLCs to a third-party purchaser. The transfer was concealed.  On May 15, 2008, Daniel Branch testified that there was not a pending deal to sell or convey Horizon to a third party.  (Dan Branch Dep. 5/15/08, pp. 8-9.)  In actuality, the Asset Purchase Agreement was signed that day or the next.  (Dan Branch Dep. 2/18/09, pp. 9-10.)  Defendants did not reserve funds to satisfy its obligations to HMSA. Due to Defendants' dilatory tactics, HMSA did not receive a copy of the Asset Purchase Agreement until January 13, 2009.  HMSA initiated the Horizon Litigation on July 9, 2007; thus, the lawsuit was pending at the time of the 2008 Transfer.  Defendants transferred all or substantially all of the assets of Horizon, Med Fund, and the Individual

20

(5:09CV01575)

> LLCs to the third-party purchaser.  As set forth above, Horizon was insolvent by
> 2005, meaning that it was insolvent at the time the 2008 Transfer was made.
> HMSA believes that the evidence will show that Med Fund and the Individual
> LL's were rendered insolvent by the 2008 Transfer.

ECF Nos. 284 at 18; 41 at 15.

### 3.  Fraudulent Transfer under Ohio Revised Code § 1336.05

Ohio Revised Code § 1336.05(A) provides that a transfer is fraudulent if it is made after a

creditor's claim has arisen, the debtor does not receive a reasonably equivalent value in exchange

for the transfer, and the debtor was insolvent at that time or the debtor became insolvent as a

result of the transfer.  There are two definitions of insolvency in Ohio's Uniform Fraudulent

Transfer Act:

> (1) A debtor is insolvent if the sum of the debts of the debtor is greater than all of
> the assets of the debtor at a fair valuation.

> (2) A debtor who generally is not paying his debts as they become due is
> presumed to be insolvent.

R.C. 1336.02(A).[6]  In the instant matter, Hitachi argues the following:

> HMSA's right to payment arose in conjunction with the SMAs in 2002, 2003, and
> 2004–before Defendants transferred Horizon's assets to themselves and others.
> Horizon did not receive any value in exchange for the transfers.  Horizon was
> insolvent (*i.e.*, was not paying its debts as they became due), and it was certainly
> insolvent after the transfer of all of its assets to Med Fund.

ECF Nos. 284 at 18; 41 at 15.

---

[6]  A transfer is defined as "every direct or indirect , absolute or conditional, and voluntary
or involuntary method of disposing of or parting with an asset or an interest in an asset, and
includes payment of money, release, lease, and creation of a lien or other encumbrance." R.C.
1336.01(A)(4)(L). A claim is defined as "a right to payment, whether or not the right is reduced
to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
undisputed, legal, equitable, secured, or unsecured." R.C. 1336.01(C).

(5:09CV01575)

The magistrate judge acknowledged Hitachi's allegations regarding David Branch's alleged control over Horizon and JFB's mind, will, or existence, but ultimately focused upon Hitachi's fraudulent transfer claim.  ECF No. 284 at 11-18.  He distinguished the requisite "fraud, an illegal act, or similarly unlawful act" to pierce the corporate veil from Hitachi's allegation of fraudulent transfer:

> In order to pierce the corporate veil in this case, Hitachi must demonstrate, among other things, that control over the corporation by those to be held liable was exercised in such a manner as to commit fraud, an illegal act, or a similarly unlawful act against the person seeking to disregard the corporate entity. *Dombroski, supra*.  As the undersigned recognized in the [I]nterim [R]eport and [R]ecommendation on the motion for preliminary injunction, 'Hitachi may not recover damages merely on a showing of corporate alter ego or veil piercing; [Hitachi] must establish a tenable cause of action along with these theories. The only stand alone claims that [Hitachi] has stated are for fraudulent transfer.' (ECF [No. 173 at 21] []).  In other words, Hitachi has not asserted a general fraud claim against the Defendants, and, therefore, the veil piercing remedy in this case is predicated solely upon the fraudulent transfer claims.

ECF No. 325 at 5-6.  The magistrate judge explained that in order to invoke the veil piercing remedy, Hitachi must establish fraud.  ECF No. 325 at 16.  He further detailed the following:

> Hitachi's only reference to the fraudulent transfers claims in its motion for summary judgment is to "incorporate[ ]* * * by reference its previous briefing on the issue of fraudulent transfers" from its motion for preliminary injunction. (ECF Dkt. #284, Hitachi's Motion for Summary Judgment, p. 15.)

> In the [I]nterim [R]eport and [R]ecommendation on the motion for preliminary injunction, the undersigned expressed confusion regarding Hitachi's analysis of the fraudulent transfers claims:

> Plaintiff's complaint and brief raise inconsistencies as to the manner in which Plaintiff is suing Defendants.  Section 1336.08 of the Ohio Revised Code permits recovery of an asset from the transferee of a fraudulent transfer.  In Counts II through VIII of the complaint, Plaintiff seeks to recover under this section, making it appear as though Plaintiff has sued Defendants as transferees. However, Plaintiff also alleges that Defendants are debtors because the

22

(5:09CV01575)

judgment-debtors were merely Defendants' alter egos.  ECF Dkt. # 41 at 8.  This averment makes it seem as though Plaintiff is pursuing a different theory of recovery.  Therefore, the instant complaint can be construed as raising two types of fraudulent transfer claims.  Despite the confusion noted by the undersigned, Hitachi made no effort to clarify its claims in its motion for summary judgment, choosing instead to incorporate by reference its fraudulent transfer arguments from the motion for preliminary injunction.

Furthermore, any analysis of the fraudulent transfer claims, as articulated in the brief in support of the motion for preliminary injunction, requires considerable speculation regarding the essential elements of the claims.  For instance, Hitachi appears to allege that Med Fund was the transferee at issue in Counts II–IV.  If Med Fund is the transferee, Med Fund is a necessary party, but Med Fund is not a defendant in this case.  Hitachi does not allege that Med Fund is a successor corporation of Horizon Medical nor does Hitachi seek to pierce the corporate veil of Med Fund.  Perhaps Hitachi seeks to recover from the Defendants in Counts II-IV as subsequent transferees, or transfer beneficiaries, or as alter egos of Horizon Medical, however its theory of liability and the law supporting that theory are impossible to discern from the brief in support of the motion for preliminary injunction.  Of equal import, Hitachi fails to identify the value of the assets transferred from Horizon Medical to Med Fund in 2005.  Damages in a fraudulent transfer action are limited to the amount of the assets transferred.

Hitachi appears to have alleged the fraudulent transfers claims in this case for the sole purpose of establishing the fraud element of the veil piercing remedy, without regard to the essential elements of its fraudulent transfer claims.  While Hitachi may assert viable fraudulent transfers claims at trial, those claims have not been clearly articulated in the brief in support of the motion for preliminary injunction.  Adding to the confusion, throughout Hitachi's brief in support of its motion for preliminary injunction, Hitachi presupposes veil piercing in its fraudulent transfer analysis.  As a consequence, summary judgment on the fraudulent transfer claims is not warranted.

ECF No. 325 at 16-18.

Objecting to the magistrate judge's recommendation, ECF No. 350, Hitachi claims that it

has come forward with sufficient facts to establish summary judgment against David Branch.

ECF No. 350.  Hitachi argues that David Branch was on both the transferring and receiving ends

of conveyances of assets that were fraudulently made in order to defraud Hitachi.  ECF No. 350

(5:09CV01575)

at 17.  Further, Hitachi contends that "Defendant is a debtor/transferor, because he stands in the shoes of Horizon Medical Group and is accountable for the series of fraudulent transfers that defrauded HMSA and prevented it from collecting its judgment."[7]  ECF No. 350 at 17. Additionally, in its objection, Hitachi asserts that the Court should grant summary judgment because their motion is unopposed and Defendant David Branch's failure to establish a showing of an element essential to his case mandates the entry to summary judgment.  ECF No. 350 at 21.

The Court addresses Hitachi's last argument, uncontested summary judgment motions, first.  Summary judgment should not automatically be entered if unopposed.  Summary judgment may be granted only when it is appropriate to do so.  *See* Fed. R. Civ. P. 56(e) ("If the opposing party does not so respond, summary judgment should, *if appropriate*, shall be entered against that party.")  Uncontested summary judgment motions must, nevertheless, be examined carefully by the district court to determine whether no genuine issue of material fact remains and whether judgment is appropriate as a matter of law.  *See* *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008).  The Court may not accept as true the moving party's itemization of undisputed facts; instead, the Court must satisfy itself that the evidence in the summary judgment record supports this relief.  *See* *Vermont Teddy Bear Co., v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2nd Cir. 2004).

Relying primarily upon its claims of fraudulent transfers, Hitachi objects to the

---

[7]  In support of its objection, Hitachi relies on *Bloomingdale v. Stein*, 42 Ohio St. 168, 171-172 (1884).  Hitachi further objects to the magistrate judge's finding that "if Med Fund is the transferee, Med Fund is a necessary party, but Med Fund is not a defendant in this case."  ECF Nos. 284 at 18; 350 at 20.  Hitachi explains that it would be futile to pursue Med Fund because Med Fund was effectively sold in May 2008.  ECF No. 350 at 20.

(5:09CV01575)

magistrate judge's ruling that Hitachi must establish fraud to pierce the corporate veil.  As

Hitachi wrote: "[u]nder *Dombroski*, the burden is not this rigid.  The test is 'fraud, an illegal act,

or similarly unlawful act.'  *Dombroski*, *supra*. at 513 ("striking a balance between the strict and

lenient tests applied theretofore by courts of appeals in Ohio and rejecting the strict fraud and

illegal act test because: 'limiting piercing to cases of fraud or illegal acts . . . insulates

shareholders when they abuse the corporate form to commit acts that are as objectionable as

fraud or illegality.'").  *Id*.  ECF No. 350 at 10.  Based upon this theory, it is David Branch's use

of the corporations to commit fraudulent transfers that Hitachi relies upon to satisfy the second

prong of the *Belvedere/Dombroski* test and to pierce the corporate veil.

Upon its *de novo* review, accepting that the burden is not rigid, the Court, nonetheless,

finds that Hitachi has failed to make a *prima facie* showing that the alleged fraudulent transfers

mandate summary judgment against David Branch and an award of monetary damages to Hitachi

against him as a transferor and shareholder/*alter ego* of Horizon, *i.e.* the veil piercing remedy.

Accordingly, summary judgment in Hitachi's favor is, therefore, inappropriate.  Hitachi's

objections are overruled and the Report and Recommendation is modified[8] as described herein.

### IV.  Conclusion

For the aforementioned reasons, Defendant Martin Kern and Plaintiff Hitachi's objection

to the Report and Recommendations (ECF No. 336; 350) are overruled, except as stated herein.

---

[8]  The modification is slight in that it acknowledges Hitachi's objection to the rigid
requirement that Hitachi "must demonstrate fraud" as stated in Report and Recommendation, but
declines to agree that the alleged fraudulent transfers satisfy the second element of the
*Belvedere/Dombroski* veil-piercing test.  *See* ECF No. 325 at 16; 350 at 2.

(5:09CV01575)

Summary judgment is granted in Defendant Martin Kern's favor as it relates to piercing the

corporate veil of JFB Holdings, Inc. and denied as to piercing the corporate veil of Horizon

Medical Group, Inc.  ECF No. 81.  Summary judgment as to Plaintiff Hitachi Medical Systems

America, Inc. is denied.  ECF No. 284.


       IT IS SO ORDERED.


September 7, 2011                              */s/ Benita Y. Pearson*
Date                                       Benita Y. Pearson
                                           United States District Judge